## GARDNER v. PANAMA RAILROAD CO.

No. 22.　Argued October 11, 1951.—Decided November 5, 1951.

*Eugene Eisenmann* argued the cause and filed a brief for petitioner.

*Thomas J. Maginnis* argued the cause for respondent. With him on the brief was *Paul M. Runnestrand.*

PER CURIAM.

This suit in admiralty, a libel *in personam* brought in the District Court for the Canal Zone, is petitioner's third attempt to secure damages for injuries alleged to have been sustained on December 3, 1947, while a passenger on board respondent's steamship *Panama*.

Petitioner instituted her first action against the respondent on April 10, 1948. This complaint was dismissed October 7, 1948, after the company successfully maintained that petitioner's only remedy was to sue the United States under the Federal Tort Claims Act; that respondent, whose entire stock is owned by the United States, was a "federal agency" within the meaning of that Act.[1]

An action against the United States filed on November 29, 1948—still within the one-year period of limitation— was dismissed by the District Court before reaching trial on the merits, after Congress had amended, on July 16, 1949, the Federal Tort Claims Act, excluding from its coverage "Any claim arising from the activities of the Panama Railroad Company."[2]

Five days later, on October 19, 1949, petitioner commenced the present suit. Respondent pleaded laches on the theory that, since the one-year Canal Zone statute of limitations[3] now barred any action at law, laches should bar any remedy in admiralty. The District Court sustained this defense, and entered judgment for the respondent. The Court of Appeals affirmed on that ground, 185 F. 2d 730. We granted certiorari, 341 U. S. 934.

Though the existence of laches is a question primarily addressed to the discretion of the trial court, the matter

---

[1] 28 U. S. C. §§ 2671, 2679.

[2] Public Law 172, 81st Cong., 1st Sess., 63 Stat. 444, 28 U. S. C. § 2680 (m).

[3] Canal Zone Code, 1934, Tit. 4, § 87 (3).

should not be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief. *The Key City,* 14 Wall. 653 (1872), *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483 (1919); *Holmberg* v. *Armbrecht,* 327 U. S. 392 (1946); see *McGrath* v. *Panama R. Co.,* 298 F. 303, 304 (1924).

Petitioner has diligently sought redress in this case. Twice within the year following her injuries she brought suit. The second action abated through an Act of Congress and not through any fault of her own. There is no showing that respondent's position has suffered from the fact that the claim has not yet proceeded to trial on its merits.

Respondent contends that, in any event, the decision below must be affirmed because the petitioner at no time has had a cause of action against the company. It contends that, at the time of the injury, the United States and not the company was liable, and that Public Law 172, which now renders the company amenable to suit, should not operate retroactively to transfer the preexisting liability of the Government to the respondent.

We must reject this view. The company was subject to suit before passage of the Tort Claims Act, *Panama R. Co.* v. *Minnix,* 282 F. 47 (1922), and its inclusion within the scope of that Act meant only that the United States was responsible in damages for its torts. Without interval, from the time of respondent's incorporation, until July 16, 1949, those injured through fault of the company were never left without means of redress. Respondent would now have us attribute to Congress the intent to create an inequitable hiatus. Despite the fact that the stated "purpose" of Public Law 172 was simply

to "exclude claims against the . . . Company from the provisions" of the Tort Claims Act,[4] respondent would have us hold that Congress meant to cut off, summarily, the remedy of all who had sued the United States for torts which had been committed by the Panama Railroad Company during the year preceding enactment of Public Law 172.

In our view, the amendment permitted outstanding claims upon which suit had been instituted against the United States to be enforced by prompt proceedings directly against the company. The petitioner followed this course. This interpretation would seem to be sustained by the statement of the company's president when he endorsed the passage of Public Law 172, securing the exclusion of respondent from the Tort Claims Act, at which time he said that though the Act embraced "claims against the Panama Railroad Company," its provisions were not well designed to expedite the redress of such injuries, and that Congress should enact Public Law 172 "to continue unimpaired . . . the amenability of the Company to suit in the ordinary course."[5]

The decision of the Court of Appeals is reversed and the cause is remanded to the District Court for further proceedings.

*Reversed.*

MR. JUSTICE MINTON took no part in the consideration or decision of this case.

---

[4] H. R. Rep. No. 830, 81st Cong., 1st Sess.; S. Rep. No. 167, *id.*

[5] H. R. Rep. No. 830, *supra*, 3, 4; S. Rep. No. 167, *supra*, 3, 4.