Gertrudis Santana FLORES

v.

A. H. BULL STEAMSHIP CO., Inc.

Antonio Perez APONTE

v.

A. H. BULL STEAMSHIP CO., Inc.

Felipe De Jesus ARROYO

v.

WATERMAN STEAMSHIP CORP.

Ramon Colon TORRES, deceased

v.

WATERMAN STEAMSHIP CORP.

Astacio ROSARIO

v.

WATERMAN STEAMSHIP CORP.

Nos. 24-58, 25-58, 28-58, 29-58 and 30-58.

United States District Court
D. Puerto Rico,
San Juan Division.
Dec. 10, 1958.

Jerome Golenbock, New York City, and Stanley L. Feldstein, San Juan, P. R., for libelants.

Hartzell, Fernandez & Novas, San Juan, P. R., for respondent.

RUIZ-NAZARIO, District Judge.

All of the above suits were originally filed in District Courts in Continental United States under the Jones Act, 46 U.S.C.A. § 688. They were subsequently transferred to this court, where upon motion by the respective libelants, they were permitted to amend their complaints to libels in order to state claims under the general maritime law. (Order of May 13, 1958 entered on May 14, 1958). Respondents have filed exceptive allegations alleging laches in all of the above suits. The cases of Rodolfo de Jesus v. Bull, No. 21-58; Vincente Martinez v. Bull, No. 22-58, and Felix Rodriguez Torres v. Baltimore Insular Line Inc., No. 23-58, also consolidated with the above were settled after submission of the exceptions to the court for decision.

842

It is contended by the libelants, as indeed they have consistently done (see Marrero v. The S.S. Kathryn, D.C.P.R., 161 F.Supp. 420), that the analogous statute of limitations which the Court is bound to follow in determining whether the suits are prima facie barred by laches, is the statute of the state where the suit was originally filed, and not the statute of the Commonwealth of Puerto Rico. In the Marrero case supra, I held that the applicable statute is the Workmen's Compensation Act of Puerto Rico, 11 L.P.R.A. § 32, and that a suit against third parties must be instituted within one year following the date of the final decision of the employee's case by the Manager of the State Insurance Fund. That conclusion was reached after consideration of many factors, and represents reflection and the exercise of discretion, not merely "by a reference to and a mechanical application of the statute of limitations" (Gardner v. Panama R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31). In addition to the facts in the Marrero case, the court was guided by the following language of Judge Maris in Guerrido v. Alcoa Steamship Co., 1 Cir., 234 F.2d 349, at page 355:

"The district court, however, held that the Workmen's Accident Compensation Act of Puerto Rico applies to his case and lays down conditions precedent to his suit which he has not met. In the Lastra case [Lastra v. New York & Porto Rico S.S. Co., 1 Cir., 2 F.2d 812], this court held that the Workmen's Accident Compensation Act of Puerto Rico which was then in force applied to maritime workers. *We adhere to that view.* For we still think, as we indicated in the Lastra case, that Congress intended by section 8 of the Jones Act to give the Legislature of Puerto Rico full power to provide compensation for marine workers injured in Puerto Rican waters to the exclusion of the remedies against their employers provided by the American maritime law. It is very persuasive of this intent that Congress at about the same time as it passed the Jones Act sought to grant similar authority to the states to provide workmen's compensation for maritime workers. The fact that this action was later held by the Supreme Court to be abortive as an unconstitutional delegation of Congressional power to the States does not detract from its weight as evidence of the intention of that body. Nor does it indicate a similar lack of power to act with respect to Puerto Rico. For what Congress could not constitutionally delegate to the legislature of a state as the organ of an independent sovereignty, it might well be able to delegate to the legislature which it had created for a territory which it had organized. There is nothing in the Congressional actions which led to the establishment of the Commonwealth of Puerto Rico to suggest that Congress intended the Commonwealth to have less power of legislation in the field of maritime law than the territorial legislature had theretofore enjoyed. We conclude, therefore, that the Workmen's Accident Compensation Act of the Commonwealth of Puerto Rico covers maritime workers injured or killed in the territorial waters of Puerto Rico except to the extent that it may have been superseded as to any class of maritime workers by compensation legislation passed by Congress and intended to apply to all navigable waters of the United States". (Emphasis supplied).

The quoted language is significant, because, it proclaims the Puerto Rican Act as the basis for the admiralty suit in this court and indeed bespeaks a delegation, not revoked by the establishment of the Commonwealth, to the local legislature of the power of Congress to legislate respecting marine workers injured in Puerto Rican waters. The legislation enacted by the Puerto Rican Legislature pursuant to this delegated authority, clearly establishes as a condition that

suit must be instituted within one year after the final decision of the Manager of the State Fund. In the same section provision is made for an abeyance of suit during ninety days, to permit the Manager to bring suit in the name of the injured workman or his beneficiaries. 11 L.P.R.A. § 32. The point is that the Puerto Rican Act, approved under Section 8 of the Jones Act of 1917, 48 U.S.C.A. § 749 ("The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico * * *") represents the wisdom of the legislature of Puerto Rico as applied to the problems of injured marine workers. With respect to the suits now being considered, periods of limitation and periods of abeyance are provided for reasons debated and settled by the legislature of the forum where the injury was suffered, where the court wherein the issues are to be tried sits, where the witnesses reside, where the records are kept, where the places of hospitalization are located, where the investigation must be made, and, significantly, the forum in which the determination of undue prejudice to the respondent as a consequence of the passage of time must be made. Surely it would be inequitable to ignore the local Act and follow the statute of limitations of New York or New Jersey or whatever state of the Union a longshoreman injured in Puerto Rican waters filed suit originally.

I am aware of the rule in the Second Circuit that reference should be made to the limitation statute of the forum of the state where the libel is filed in determining laches. Le Gate v. The Panamolga, 2 Cir., 221 F.2d 689. But it would be inequitable, in view of the considerations set forth above, mechanically to apply the statute of the state of filing of the libel in these cases, when all subsequent proceedings are to take place in the forum where the alleged accident occurred, especially so where, as here, the cases were first filed as Jones Act actions and after being transferred to this forum, changed to admiralty suits upon plaintiffs' motion. It has not been shown that any attempt was ever made to seize the vessels in Puerto Rico, although respondents maintain a regular service to Puerto Rico. There was every reason to institute suit in Puerto Rico instead of Continental United States, except perhaps for the reasons stated by Judge Medina in Torres v. Walsh, 2 Cir., 221 F.2d 319, 320. For these reasons, and in the exercise of my discretion, I must hold that these suits are prima facie barred by laches, and that the burden is cast upon libelants to show special circumstances excusing their delay. The libels will therefore be dismissed unless libelants, within 30 days file an amended libel showing special circumstances excusing their delay.

It is so ordered.