Federico Marin GUTIERREZ, Libellant,

v.

THE Steamship "S.S. HASTINGS", her engines, boilers, etc. and Waterman Steamship Corp., Respondents.

No. 19–59.

United States District Court D. Puerto Rico, San Juan Division.

May 3, 1961.

Nachman & Feldstein, Stanley L. Feldstein, San Juan, P. R., for libellant.

Hartzell, Fernandez & Novas, San Juan, P. R., for respondents.

RUIZ-NAZARIO, District Judge.

Upon the conclusion of the trial of this suit, the Court stated from the bench that it was convinced, from the evidence adduced, that respondent's liability, both as regards unseaworthiness and negligence, had been proven and that libellant had overcome respondent's exceptive allegation in all its three grounds.

Accordingly the case was submitted exclusively for the purpose of determining the loss of earnings and other damages suffered by the libellant and recoverable from the respondent on account of the accident involved herein. In that respect, the court then directed that the expert medical testimony be transcribed and that once the transcript was delivered to the court and to counsel for the parties, the latter submit briefs in support of their respecting contentions as to earnings and damages.

The transcripts were in due course filed and libellant thereafter filed his memorandum on these two questions.

Respondent did not submit its memorandum until October 18, 1960.

Although the court had definitely directed counsel to limit their memoranda to the questions of loss of earnings and other damages, counsel for respondent saw fit to discuss and argue in its memorandum, not only the above issues but also the issues of respondent's liability based on unseaworthiness and negligence, as well as the issues raised in respondent's exceptive allegations.

I have carefully considered the transcript of the expert medical testimony and counsel's memoranda and I am now fully advised in the premises.

I.

■ As to the respondent's liability based on unseaworthiness and negligence respondent's memorandum of October 18, 1960 has failed to convince me that the ruling thereon given from the bench at the termination of the trial should in any way be disturbed or modified.

■ The fact that libellant suffered his injuries while working on the apron does not in any way preclude him from recovering on the basis of the unseaworthiness of the vessel. See Marceau v. Great Lakes Transit Corporation, 2 Cir., 146 F.2d 416, 418. Robillard v. A. L. Burbank & Co., Ltd., D.C.S.D.N.Y.1960, 186 F.Supp. 193.

There is no doubt that under the evidence adduced herein the S. S. Hastings was unseaworthy at the time of the accident in question, that respondent failed to provide libellant with a safe place to work and also that respondent's negligence was the proximate cause of the accident and that therefore respondent is liable for the damages suffered by libellant.

II.

As to the exceptive allegations there is nothing in respondent's memorandum which would justify changing my ruling at the termination of the trial.

The libel unquestionably states two good causes of action as to which the court, on the basis of the evidence adduced at the trial, has ruled that respondent is liable to libellant on the grounds stated above.

As regards laches and the plea of limitations, the evidence shows that libellant in 1957, long before the one year period invoked by respondent had elapsed, consulted attorney Cole, and signed a contract retaining him as his attorney to bring the suit; that Cole left for New York and did not contact libellant for some time until late in 1958 when libellant contacted attorney Feldstein and asked him to straighten up the situation with Mr. Cole and take his case.

■ But even if the above were not to be considered as sufficient by itself to meet the defense of laches, still there are other factors that the court must consider in order to give due application to the said equitable doctrine.

As stated by the Supreme Court in Gardner v. Panama R. R. Co., 342 U.S. 29, 72 S.Ct. 12, 13, 96 L.Ed. 31:

"Where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief".

The evidence adduced at the trial herein amply shows that the accident report, the names of witnesses, the records of the medical treatment received by libellant on account of the accident in question, payrolls and other records of the stevedoring contractor, including those relating to the unloading operations of the S. S. Hastings on the voyage on which the accident occurred, were duly preserved and kept since the date of the accident until the day of trial. All these records fully gave respondent all the data it needed for its defense. Indeed respondent itself offered most of those records in evidence.

It must, therefore, be concluded, as I hereby conclude, that no prejudice to the respondent has ensued from the mere passage of time; that libellant's delay in bringing his action is no bar to his request for relief and that respondent's exceptive allegations, based on laches and limitation must be denied.

### III.

The damages.

■ As regards libellant's loss of earnings while he was being treated for the injuries caused to him by the accident in question, they amounted to $250, i. e., five weeks he was out of work, at the rate of $50 per week. ﹅

Now the task of ascertaining his other damages is not so simple.

This libellant had previously suffered an injury to his back in 1951, also working as a longshoreman and had been out of work for a period of 6 months on that account. Nevertheless he had been declared totally cured and discharged from further treatment by The State Insurance Fund. Thereafter he went back to work, first as a carpenter and later as a longshoreman.

The expert medical testimony of Dr. Rifkinson, witness for the libellant, as well as that of Dr. Ramirez de Arellano, witness for the respondent was to the effect that the libellant had recovered completely from said 1951 accident.

In 1956 he suffered the accident here in question.

Dr. Rifkinson testified that as a consequence of this 1956 accident, libellant sustained a herniated disc and that the 1951 accident played no role in said condition.

Dr. Ramirez de Arellano, medical expert testifying for the respondent was in complete agreement with Dr. Rifkinson as to the latter's diagnosis of herniation of the intervertebral disc at L4, L5, as the condition from which libellant is suffering at present.

Now, after the 1956 accident involved herein, libellant suffered a fall in 1958 which had no visible consequences in his then physical condition and in 1959 he suffered another accident which somewhat aggravated the symptoms occasioned by the 1956 accident.

The above two medical experts had not examined libellant contemporaneously with the 1956 accident. They both examined him after the 1959 accident had taken place.

No other doctor, except Drs. Iguina, Bayonet and del Prado had examined him after the 1956 accident and before the 1959 occurrence.

Dr. Iguina's testimony is of no help. Although he indulged in generalizations as to libellant's physical condition after the 1956 accident, he did not have any records with him and was unable to base his assertions on any physical findings made either by him or by any other physician.

Dr. Bayonet's testimony was even less positive than Dr. Iguina's.

Dr. del Prado had merely made a routine medical examination in connection with a job application by libellant, in 1958. He claimed that he had made another physical examination of libellant in 1958 in connection with an occasion on which the libellant admitted he had not suffered any injury. This doctor brought no notes, or records, although he had been

previously subpoenaed to testify as to the history he received from libellant in 1956. He further admitted that he never even took from libellant the history of any of his accidents. Neither does it appear from his testimony that he examined the libellant in connection with the injuries he suffered in 1956.

So the only expert medical testimony to which the court may and has given full consideration is that of Dr. Rifkinson and Dr. Ramirez de Arellano.

Both agree that the 1951 accident has no bearing on libellant's present physical condition. Both also agree that said physical condition is, primarily, the consequence of the 1956 accident here in question and that the 1959 accident did not cause that condition, but may have somewhat aggravated the same. They both also agree that libellant is permanently incapacitated unless he submits to surgery, but neither of them can guarantee that surgery will be successful.

There is no evidence of the reasonable value of such surgery.

Beyond question libellant is presently suffering great physical pain and mental anguish. He is only 51 years old and has a normal working expectancy of not less than 14 years. Even if he undergoes surgery and this is successful, still he will remain with a permanent residual loss of motion and function.

In view of all the above considerations and having in mind libellant's loss of earnings, his pain, mental anguish, incapacity, necessity for surgery and absence of assurance that this be successful, the residual incapacity that would remain, even if surgery is successful, the period of four years during which he has endured the symptoms and the 14 years of working expectancy, and further considering whatever impact the 1959 accident may have had towards aggravating libellant's injuries resulting from the 1956 accident, the court believes that a fair and reasonable compensation for libellant's all other damages is the sum of $18,000.

Had it not been for the impact of the 1959 accident libellant would have been entitled to much more.

A decree in accordance with the above considerations shall be rendered in due course.

Counsel for libellant is directed to submit, within a period of 15 days from the date of notice of this memorandum, proposed findings of fact, conclusions of law, and form of decree, serving copy thereof to counsel for respondent, who shall thereafter have a like period to submit objections and amendments thereto.