**FIRST MISSISSIPPI CORPORATION,**
**Plaintiff,**

v.

**FIELDER TOWING COMPANY, INC., Warfield Towing Service, Inc., and Greenville River Services, Inc., in personam and M/V JENNIFER CUMMINS, her engines, boilers, tackle, etc., in rem, Defendants.**

**No. GC 75–57–S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

May 24, 1979.

James L. Robertson, Campbell & DeLong, Greenville, Miss., for plaintiff.

William G. Beanland, Brunini, Everett, Beanland & Wheeless, Vicksburg, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The court released herein, on February 7, 1979, its Amended Findings of Fact and Conclusions of Law in which the court held that defendant Fielder's tug, the M/V Jennifer Cummins "breached its duty to exercise such reasonable care and maritime skill as prudent navigatores [sic] employ in the performance of similar duties and is liable in damages [to plaintiff] unless the claim therefore [sic] is barred by laches."

At the outset of the trial, the court bifurcated the submission of the action, that is, should liability be established, the defendant would be heard on its laches defense.

The defense of laches was considered in Greenville, Mississippi, on March 7, 1979, on the record previously made in the case and the evidence then produced by parties. The court having considered the issue and argument of counsel, now adopts the following findings of fact and conclusions of law.

The Supreme Court addressed the issue of laches in *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951).

There, the court said:

Though the existence of laches is a question primarily addressed to the discretion of the trial court, the matter should not be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well. Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued

from the mere passage of time, there should be no bar to relief.

342 U.S. at 30–31, 72 S.Ct. at 13.

Judge Simpson addressed the issue in *McMahon v. Pan American World Airways, Inc.,* 297 F.2d 268 (5th Cir. 1962) when he said:

> Laches is a flexible measure of the time within which an admiralty action must be brought. No specific time limit is set. Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the respondent has ensued from the mere passage of time, there should be no bar to relief.

297 F.2d at 269.

■ The oft-repeated criteria in this circuit is succinctly stated by Judge Thornberry in *Watz v. Zapata Off-Shore Company,* 500 F.2d 628 (5th Cir. 1974). There he said:

> To the foregoing record the district court applied this Circuit's oft-repeated criteria for determining the applicability of the doctrine of laches: a delay in asserting a right or claim; the issue whether or not the delay is excusable; and the question of undue prejudice to the party against whom the claim is asserted.

500 F.2d at 632.

The parties have argued the applicability of several statutes of limitations. Plaintiff argues that suit was started well within the period permitted for an action in tort, this being the issue here—the negligence of the tug. Plaintiff reasons that an applicable statute is the six-year Mississippi statute, Miss.Code Ann. § 15–1–49, which generally governs unintentional tort actions in Mississippi. Defendant argues that the action sub judice involves the transportation of goods and urges the application of the limitations of action contained in the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), or the Harter Act, 46 U.S.C.A. §§ 190, et seq.

■ The purpose of the "Analagous Statute" rule is procedural. It governs the burden of proof. Laches as a defense to an admiralty suit is not measured by the strict application of a statute of limitations, in-

stead whether delay will defeat a suit must in every case depend on the peculiar equitable circumstances of the case. The Supreme Court discussed the issue in *Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). There, the court said:

> The Court of Appeals found it unnecessary to consider whether Czaplicki could maintain this suit, because it was held barred in any event on account of laches. The only reason given for this holding was that both the New York and New Jersey statutes of limitations, the two that might be applicable, had run. It is well settled, however, that laches as a defense to an admiralty suit is not to be measured by strict application of statutes of limitations; instead, the rule is that "the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case." *The Key City,* 14 Wall. 653, 660 [20 L.Ed. 896, 898]. In cases where suit has been brought after some lapse of time, the question is whether it would be inequitable, because of the delay, to enforce the claim. *Holmberg v. Armbrecht,* 327 U.S. 392, 396 [66 S.Ct. 582, 584, 90 L.Ed. 743, 747; 162 A.L.R. 719]; *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 488–489 [39 S.Ct. 533, 535–536, 63 L.Ed. 1099, 1106, 1107]. "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." *Gardner v. Panama R. Co.,* 342 U.S. 29, 31 [72 S.Ct. 12, 13, 96 L.Ed. 31, 36]. This does not mean, of course, that the state statutes of limitations are immaterial in determining whether laches is a bar, but it does mean that they are not conclusive, and that the determination should not be made without first considering all the circumstances bearing on the issue.

351 U.S. at 533, 76 S.Ct. at 951.

The questions here presented are whether the delay of plaintiff in asserting its claim against Fielder is inexcusable; and, if so, whether Fielder was prejudiced thereby.

The court does not find it necessary in order to reach a decision to entertain the "Analagous Statute" issue.

The laches test in the action sub judice partakes of two parts—(1) was the delay in giving notice of and prosecuting the claim unreasonable; and (2) was Fielder prejudiced thereby. *See Fidelity & Casualty Company of New York v. C/B Mr. Kim,* 345 F.2d 45 (5th Cir. 1965), where the court said:

> The inquiry on laches partakes of two parts—(1) the excuse for the delay and (2) prejudice to the pursued. As Judge Friendly's opinion in *Larios v. Victory Carriers, Inc.,* 2 Cir., 1963, 316 F.2d 63, carefully develops, the emphasis is more and more on (2)—prejudice—than on (1). "A weak excuse may suffice if there has been no prejudice; an exceedingly good one might still do even where there has been some." 316 F.2d 63, 67. The delay aspect is extremely relative. For " * * * saying that a plaintiff who has fully cleared each of two hurdles will win is not the same as saying that a plaintiff must fully clear each of two hurdles to win." 316 F.2d 63, 67. And we have recently both phrased the principle in positive terms and have applied it in a most revealing way. "A suit in admiralty," Judge Hutcheson wrote for this Court, "is barred by laches only when there has been both [1] unreasonable delay in the filing of the libel and [2] consequent prejudice to the party against whom suit is brought."

345 F.2d at 50, 51. (Footnote omitted)

I. The Delay—Reasonable or Unreasonable.

The barge was loaded at Donaldsonville, Louisiana, on May 23, 1973. On June 1, 1973, at approximately Mile 170, Lower Mississippi River, it was placed in the tow of the M/V Harriet Ann, a tug owned by the Upper Mississippi Towing Corporation. The barge was dropped at approximately 6:00 P.M. on June 5, 1973, at the White River Fleet located at approximately Mile 600 on the Lower Mississippi River.

Between approximately 6:00 P.M. on June 5, 1973, and approximately 6:30 P.M. on June 6, 1973, the loaded barge was within the exclusive custody and control of Greenville River Services, Inc. The barge was placed in the tow of the M/V Jennifer Cummins, a tug owned by Fielder, on June 6, 1973, at about 6:30 P.M.

The M/V Jennifer Cummins delivered the barge to the Mississippi Lime Company at about 4:30 P.M. on June 7, 1973, by tying it to shore wires several hundred yards above the Mississippi Lime Company dock at Friars Point, Mississippi.

The next morning June 8, 1973, the M/V Salle Estelle picked up the loaded barge, moved it downriver, and spotted it at the crane barge or unloading dock at the Mississippi Limestone Company facilities at Friars Point.

When the hatch covers of the barge were opened, it was discovered that the cargo was wet and in a substantially damaged condition. There was not, nor had there been during its movement, a noticeable list of the barge.

Plaintiff's traffic manager was notified of the condition of the cargo, and a marine surveyor was dispatched to the scene. He arrived at Friars Point the next day, Saturday, June 9, 1973. Salvage operations were initiated, and the barge was towed to a repair facility for repair of its damaged skin and bulkhead.

There was no notice of the damaged barge and its cargo, or of the ongoing survey and salvage operation given to either Warfield Towing Company, who arranged the towage of the barge by the M/V Jennifer Cummins from the White River Fleet to Friars Point, Fielder Towing Company, the owner of the Jennifer Cummins, Greenville River Services, who handled the barge at the White River Fleet, or the Upper Mississippi Towing Corporation, who initiated the barge's upriver voyage.

The dispatcher for plaintiff maintained a daily log in his office showing the location of the barge at all times and the tug which had the barge in tow.

Plaintiff's office records reflect that in June, 1973, the M/V Jennifer Cummins performed towage services for plaintiff for which Fielder received payment other than the towage of the barge involved in the action sub judice. The records also reflect that a statement was rendered by Fielder to plaintiff for the towage here in question. The statement was paid by plaintiff June 22, 1973. The statement was dated June 13, 1973, and reflected the movement of the M/V Jennifer Cummins and the barge from the fleet on June 6, 1973, to the destination at Friars Point on June 7, 1973. Plaintiff was charged in the movement with 21 hours of service by the M/V Jennifer Cummins. Plaintiff can hardly be heard now to contend, at least on June 22, 1973, that it did not know that its barge was towed to Friars Point from the White River Fleet.

The first notice to anyone that plaintiff claimed damages on account of negligent towage of the barge was made on April 26, 1974, when plaintiff's product exchange manager wrote Warfield placing Warfield on notice that plaintiff was holding Warfield liable for any and all damages sustained by the barge and her cargo while under the tow by the M/V Jennifer Cummins.

Although plaintiff had knowledge of the ownership of the M/V Jennifer Cummins through information available in the invoice for the towage, and from river publications in general circulation and use among those who utilize the services of towing companies on the Lower Mississippi no notice of a claim was made against Fielder until August 28, 1974, when Fielder's insurance carrier was given notice of the claim by an attorney for plaintiff. After negotiations for settlement were abandoned, plaintiff filed its complaint on May 13, 1975.

The delay in notifying Fielder of its claim was, in the opinion of the court, inexcusable. By the exercise of reasonable diligence, plaintiff could have obtained the identity of the tug which delivered the barge to Friars Point on the day plaintiff's dispatcher received notice that the barge and its cargo had arrived in a damaged condition. Assuming arguendo, that this could not have been accomplished with reasonable diligence, plaintiff had actual knowledge that the M/V Jennifer Cummins, owned by Fielder, towed its barge from the White River Fleet to Friars Point, when Fielder's invoice, *supra,* was paid on June 22, 1973, two weeks after the discovery of the damaged barge and cargo. Plaintiff had the duty to promptly place Fielder on notice, thus, affording Fielder an opportunity to participate in the survey or take such action as might have been necessary to determine the facts concerning the towage and participate in salvage procedures.

II.  Fielder's Prejudice.

The final question on the laches issue is whether the inexcusable delay in placing Fielder on notice resulted in prejudice to Fielder. The court finds that the delay worked to the detriment of and prejudiced Fielder.

When a barge or its cargo is delivered in a damaged condition, the tug and its owner, if known, are entitled to an invitation to join and participate in the survey of the barge and its cargo. This is a valuable right and this is especially true under the circumstances here involved, where the salvage operations and disposition of the damaged, but useable cargo, were brought into question by Fielder. Even as late as June 22, 1973, this right could have been exercised to some advantage by Fielder.

In the period between the date of delivery of the barge and the receipt of notice of the claim by Fielder, several things happened which worked to prejudice Fielder's defense.

The M/V Jennifer Cummins was sold in November, 1973, to Fox Valley Marine Service, an Illinois Company. Subsequent to the sale, and after being in the custody of the new owner for a period of approximately 6 or 7 months, a fire occurred in the pilothouse of the M/V Jennifer Cummins destroying the logbook and other papers of the tug. The new owner threw away the

636

fire-damaged logbook and papers. When Fielder sought to obtain them they were unavailable and could not be produced for trial. The written history of the subject voyage represented by entries made in the tug's logbook was not available as evidence in the trial.

Fielder made a diligent search to locate the five members of the M/V Jennifer's crew who operated the tug in her movement from the White River Fleet to Friars Point. Only two could be located and of the two, only one could remember the voyage. Captain Simpson was available and testified. His memory had been impaired by the passage of time. The other pilot could not be located, and his testimony as to the movement of the tug and her tow during the off-duty hours of the captain was not available to Fielder.

The court concludes that Fielder's investigation of the question of liability was seriously impaired by the passage of time resulting from the delay of notification.

Laches is a function of equity and does not lend itself to any hard or fixed period of limitations established by statutory enactments. "The question is whether it would be inequitable, because of the delay to enforce the claim." *Czaplicki, supra,* 351 U.S. at 533, 76 S.Ct. at 951.

Fielder has shown by a preponderance of the evidence that the delay by plaintiff in placing Fielder on notice of its claim was inexcusable and worked to Fielder's detriment and prejudice. Fielder's defense of laches must prevail.