In re RECORD CLUB OF AMERICA, INC., Debtor.

RECORD CLUB OF AMERICA, INC., Plaintiff,

v.

ATLANTIC RECORDING CORPORATION, Defendant.

Bankruptcy No. 74–553.

United States Bankruptcy Court, M. D. Pennsylvania.

Feb. 18, 1982.

Nancy Grossman, Harold F. McGuire, Jr., Barthold, McGuire, Kehl & Nealon, New York City, for creditor.

Ernest R. Weiss, York, Pa., receiver.

John W. Howett, Jr. & Associates, P. C., Harrisburg, Pa., for receiver.

Sigmund A. Beck, Milgrim, Thomjan & Jacobs, New York City, for Sigmund Friedman.

Horace A. Stern, Wexler, Weisman, Maurer & Forman, P. C., Philadelphia, Pa., for Creditors' Committee.

## MEMORANDUM AND ORDER

### AVOIDING PREFERENCE OF ATLANTIC RECORDING CORPORATION

THOMAS WOOD, Bankruptcy Judge.

On December 23, 1974, Record Club of America, Inc. (RCOA), filed for relief under

Chapter XI of the Bankruptcy Act. RCOA has filed an adversarial action in bankruptcy against Atlantic Recording Corporation (Atlantic) to obtain payment for records and tapes transferred to Atlantic after the filing of bankruptcy. A consent order of the District Court of the Southern District of New York entered prior to bankruptcy provided that RCOA could contract to transfer certain records and tapes to Atlantic if the parties so chose and stated that Atlantic could set-off the purchase price of the records and tapes against RCOA's existing indebtedness to Atlantic. The parties agreed to the transfer prior to bankruptcy but the actual transfer of the merchandise did not occur until after the bankruptcy was initiated.

Atlantic asserts that no money is due RCOA for the reason that Atlantic is entitled to set-off the amount of its indebtedness to RCOA against the prior and outstanding indebtedness of RCOA to Atlantic. Atlantic further asserts that RCOA is barred from enforcing the obligation due to the limitation on actions provided by the Bankruptcy Act and due to the doctrine of laches. Lastly, Atlantic claims that § 68 of the Bankruptcy Act allows Atlantic to exercise the right of recoupment. RCOA argues that the transfer was a voidable preference as defined in the Bankruptcy Act.

VOIDABLE PREFERENCE

Section 60(a)(1) (formerly 11 U.S.C. § 96(a)(1)) of the Bankruptcy Act defines a preference as follows:

*Preferred creditors*

(a)(1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Section 60(b) provides that a trustee (or debtor in possession) can avoid a transfer if the creditor had, at the time the transfer was made, reasonable cause to believe that the debtor was insolvent. Therefore, in order to have a voidable preference under § 60 the following elements must exist: (1) a transfer of the debtor's property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt; (4) made or suffered while the debtor is insolvent, (5) within four months before bankruptcy, (6) the effect of the transfer must be to enable a creditor to obtain a greater percentage of his debt than another creditor of the same class; and (7) the creditor must have had reasonable cause to believe the debtor was insolvent at the time of the transfer.

Element (1) is present since a transfer of RCOA's property occurred when it shipped the records and tapes to Atlantic.[1] Element (2) is met since there was a transfer of records and tapes "to" Atlantic. Element (3) is met since the transfer was made to reduce RCOA's pre-existing indebtedness to Atlantic. Atlantic concedes that the transfer was made to set-off, in part, the pre-existing indebtedness of RCOA.[2] Element (4), insolvency, is met since Atlantic conceded this point through its attorneys in court papers filed in the United States District Court for the Southern District of New York, one month prior to the filing of RCOA's petition in bankruptcy.[3] Element

---

1. "Transfer" shall include the sale and every other and different mode, direct or indirect, of disposing of or parting with property of with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily, or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor. § 1(30) (formerly 11 U.S.C. 1(30)).

2. See Atlantic's Proposed Findings of Fact and Conclusions of Law, item # 5, page 2.

3. See *Atlantic Recording Corporation v. Record Club of America, Inc.*, 74 Civ. 3093 (R.J.W.) (S.D.N.Y.1974) (Plaintiff's Reply Memorandum p. 11).

(5) is met since the transfer is *deemed* to have occurred immediately before the filing of bankruptcy although it *actually* occurred after the filing.[4] Element (6) is met since the transfer allowed Atlantic to receive payment of a greater percentage of its debt than other creditors of the same class. Atlantic, an unsecured creditor, received 100 cents on the dollar for each dollar's worth of RCOA's property that Atlantic received. Since the debtor's plan proposes to pay unsecured creditors only 10 cents on the dollar, Atlantic has received a greater percentage of its debt than other unsecured creditor. Element (7) is met, as was element (4), because of Atlantic concession of RCOA's insolvency approximately one and one-half months prior to the transfer of the records and tapes. Thus, the post-petition transfer of records and tapes to Atlantic is a voidable preference.

## STATUTE OF LIMITATIONS

Atlantic defends by claiming that RCOA's claim is barred by the limitation of actions set forth in § 11(e) of the Bankruptcy Act (formerly 11 U.S.C. § 29(e)) and the four-year statute of limitations under the Uniform Commercial Code for goods sold and delivered. Atlantic relies on the following language of Section 11(e) of Chapter III of the Bankruptcy Act which states:

(e) A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy.

■ RCOA contends that § 11(e) is not applicable because that section is preempted in Chapter XI cases by § 391 (formerly 11 U.S.C. § 791). Section 391 of Chapter XI grants a broader statute of limitation. Section 391 states:

*Suspension of statutes of limitation, etc.*
All statutes of limitation affecting claims provable under this chapter (former 11 U.S.C. §§ 701 et seq.) and the running of all periods of time prescribed by this Act in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter (former 11 U.S.C. §§ 701 et seq.) is pending and until it is finally dismissed.

This inconsistency between § 11(e) and § 391 is resolved by § 302 (formerly 11 U.S.C. § 702) of Chapter XI which states that the provisions of Chapters I through VII apply in cases administered under Chapter XI only insofar as those provisions are not inconsistent with the provisions of Chapter XI. See also *Misty Management Corp. v. Lockwood*, 539 F.2d 1205 (9th Cir. 1976). Thus, due to the inconsistency between § 11(e) and § 391, § 391 applies in this Chapter XI case. Therefore, RCOA's action was timely filed.

## LACHES

Atlantic also raises the defense of laches. Laches requires an unexcusable delay of time causing prejudice to the defendant. *Gardner v. Panama Railroad*, 342 U.S. 29, 30–31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951). Atlantic's assertion of this defense is without merit since Atlantic has failed to adduce any proof indicating that it was harmed by the delay.

## RECOUPMENT

■ Lastly, Atlantic argues that it is entitled to recoupment under § 68. It cites as authority, *In re Associated Delicatessen Stores, Inc.*, 32 Am.B.R. (N.S.) 466 (E.D.N.Y.1934). Recoupment is defined therein as "the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 *Collier on Bankruptcy*, para. 68.03 (14 ed.

---

4. "If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable pro-

ceedings prior to the filing of a petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of the petition." § 60(a)(2), (in part).

1978) (emphasis in original). Under the facts of the case the doctrine of recoupment is not applicable; the claims of Atlantic and RCOA did not arise from the same transaction.

In conclusion, Atlantic's attempt to set-off the sale price of records and tapes transferred by RCOA to Atlantic was ineffective. Thus Atlantic is required to pay RCOA the contract price of the merchandise plus interest at the lawful rate (computed from the time the goods were delivered to Atlantic).

This memorandum constitutes findings of fact and conclusions of law in compliance with Bankruptcy Rule 752.

### ORDER

AND NOW, this 18th day of February, 1982, judgment is to be entered against Atlantic Recording Corporation and in favor of Record Club of America, Inc., in the amount of $101,446.90 plus interest. Interest on $94,493.25 of the judgment is to be computed from December 30, 1974. Interest on the remaining $6,953.65 is computed from February 18, 1975. SO ORDERED.