**CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, a Nebraska corporation, Plaintiff,**

v.

**TRI–COUNTY STATE BANK, Defendant.**

Civ. No. 4–91–244.

United States District Court, D. Minnesota.

June 4, 1993.

Holly A.R. Hart, Fabyanske, Svoboda, Westra & Davis, St. Paul, MN, for plaintiff.

David R. Von Holtum, Von Holtum, Maiters & Shepherd, Worthington, MN, for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on cross-motions for summary judgment. Plaintiff's motion for summary judgment will be granted and defendant's motion for summary judgment will be denied.

## FACTS

The facts in this case are no longer in dispute.[1] On May 3, 1985, the United States awarded a channel clearing and improvement project near Watson, Minnesota (Watson project) to Walter Ervin d/b/a Minnesota Drillers (Ervin). On August 16, 1985, the United States and Ervin entered into a contract for the Watson project in the amount of $439,851.00. On August 20, 1985, plaintiff Central National Insurance Company of Omaha (CNIC) issued performance and payment bonds for the project pursuant to the Miller Act, 40 U.S.C. §§ 270a *et seq.* The face amount of the performance bond was $439,851.00; the face amount of the payment bond was $219,925.50.

Defendant Tri–County State Bank (Tri–County) provided Ervin with financing for the Watson project. Because of this financing, on August 27, 1985, Ervin assigned his rights to progress payments due from the United States to Tri–County. On September 4, 1985, a representative of the United States acknowledged the assignment by letter receipt. However, Tri–County did not provide CNIC with notice of the assignment.

Following the assignment, the United States mailed each of the progress payments to Tri–County, in the form of checks payable to Tri–County alone. Tri–County credited the progress payments to Ervin's account at Tri–County. Tri–County then deducted funds from Ervin's account to reduce Ervin's indebtedness to Tri–County.

CNIC first learned of the assignment to Tri–County on October 20, 1986, through a letter sent by an agent of the United States to an attorney for CNIC. At about the same time several of Ervin's subcontractors and suppliers on the project filed actions against CNIC's payment bond in the United States District Court for the District of Minnesota. Effective October 22, 1986, Ervin entered into an agreement with CNIC under which Ervin assigned to CNIC all moneys due from the United States in connection with the project toward satisfaction of the bond claims. However, it was not until December

15, 1986, that Tri–County executed a release of its assignment.

On January 12, 1987, CNIC commenced an interpleader action in the District of Minnesota. CNIC deposited the full amount of the payment bond ($219,925.50) into the court. The individual bond claim actions and the interpleader action were consolidated into one lawsuit, and on January 26, 1988, the court entered an order for judgment under which the $219,925.50 bond amount was divided among the various bond claimants in proportion to the amounts of their respective claims.

On October 18, 1988, the United States made a final payment to Tri–County in the amount of $13,618.33. However, that payment was erroneously made because Tri–County had released its assignment on December 15, 1986. The United States discovered the mistake and on July 27, 1989, made a written request to Tri–County for the return of the $13,618.33. Tri–County did not comply with that request. In the meantime, on April 22, 1988, pursuant to the agreement under which Ervin assigned his claims against the United States to CNIC, CNIC commenced an action against the United States in the United States Court of Claims to recover for work Ervin performed on the project for which payment had not been made. In October 1990, the Claims Court entered a stipulated judgment in accord with which the United States paid CNIC $85,-000.00, and assigned to CNIC any claim that the United States had to recover the final payment of $13,618.33 mistakenly paid to Tri–County.

On April 1, 1991, CNIC commenced the instant action against Tri–County, seeking (1) recovery of the $13,618.33 final payment pursuant to the assignment of that claim by the United States, and (2) recovery of various other progress payments on equitable grounds. CNIC concedes that the majority of the assigned progress payments made to Tri–County were applied to repay loans which financed the Watson project. There

---

1. The parties stipulated to all relevant facts except one, which was tried by consent of the parties before the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota. The factual issue resolved by the Magistrate Judge is discussed *infra.*

was a dispute, however, over $95,554.31 which CNIC claimed was used by Tri–County to repay loans which were unrelated to the Watson project. The parties agreed to hold a trial on this issue before the United States Magistrate Judge. The Magistrate Judge found that $95,554.31 was used by Tri–County to repay loans unrelated to the Watson project. That amount includes the $13,-618.33 mistakenly paid to Tri–County after it had released its assignment.

The parties have now filed cross-motions for summary judgment. CNIC seeks an entry of judgment in the amount of $95,554.31 on the basis of the Magistrate Judge's finding that $95,554.31 was applied to loans unrelated to the Watson project and thus increased CNIC's exposure on the payment bond. Tri–County requests an order stating that it is not liable to CNIC for any amount.

*DISCUSSION*

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods,*

*Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Both the Miller Act and the Assignment of Claims Act are relevant in this case. The Miller Act provides that before the United States government awards any contract exceeding $25,000 to a contractor, the contractor must furnish to the United States a performance bond and a payment bond. 40 U.S.C. § 270a. The performance bond protects the United States by ensuring completion of the contract and the payment bond protects persons providing labor and material in connection with the contract by ensuring they will be paid. *Id.* § 270a(1)–(2). A surety who is called upon to complete a contract or to pay laborers and materialmen has an equitable interest, superior to the interest of the contractor's assignee, in any funds retained by the United States on the contract. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 138, 83 S.Ct. 232, 235–36, 9 L.Ed.2d 190 (1962); *Great American Ins. Co. v. United States*, 492 F.2d 821, 824, 203 Ct.Cl. 592 (1974).

The issue in this lawsuit, however, is the application of progress payments by Tri–County, not funds retained by the United States. In such a case, it has been held that a surety has a superior equitable right to such funds if the financial institution diverted the funds for purposes outside of the contract. *Coconut Grove Exchange Bank v. New Amsterdam Cas. Co.*, 149 F.2d 73, 78 (5th Cir.1945). However, the same court stated that the surety does not have a superior equitable right to the funds if the financial institution applies the funds to reduce indebtedness related to the contract because, in that case, the liability of the surety is correspondingly reduced. *Id.* at 78–79.

■ Under the Assignment of Claims Act the general rule is that a party that

contracts with the United States may not assign to a third-party any rights under the contract. 41 U.S.C. § 15. There is an exception, however, for an assignment to a financial institution of payments due from the United States provided that the assignee gives written notice of the assignment to the surety. *Id.* The purpose of the exception is to encourage financing of government contracts. *First Nat. City Bank v. United States,* 548 F.2d 928, 933, 212 Ct.Cl. 357 (1977) (en banc). However, if the financial institution fails to provide the surety with notice of the assignment, the surety may have an equitable right to recover payments made to the financial institution if the surety can establish that it was prejudiced by .the lack of notice. *New Amsterdam Casualty Co. v. Manufacturers and Traders Trust Co.,* 330 F.2d 575, 576 (2d Cir.1964).

CNIC argues that it is entitled to $95,-554.31 based on two facts. First, the Magistrate Judge specifically found that $98,554.31 received by Tri–County was applied to reduce Ervin's indebtedness in connection with loans unrelated to the Watson project. Second, Tri–County stipulated that it did not notify CNIC of the assignment as required by the Assignment of Claims Act. Thus, CNIC requests that the Court impose liability on Tri–County on equitable grounds. In the alternative, CNIC urges the Court to recognize an implied cause of action under the Assignment of Claims Act to effectuate the purposes behind the Act.

Tri–County offers several counter-arguments. First, Tri–County asserts that any equitable rights CNIC has depend on the doctrine of subrogation. Tri–County accepts that CNIC has an equitable right of subrogation to claims of the United States. Tri–County asserts, however, that except for the $13,618.33 final payment, the United States would have a right to recover the diverted progress payments only if the payments were induced by fraud, which, Tri–County maintains, they were not. Second, Tri–County argues that CNIC cannot recover from Tri–County on the basis of lack of notice of assignment because CNIC cannot establish that it was prejudiced by the lack of notice. Tri–County asserts that if the prog-

ress payments had not been sent to Tri–County the payments would have been sent to Ervin, and there is no proof that Ervin would have applied the progress payments in a manner that protected CNIC's interest. Finally, Tri–County argues that CNIC is barred from making a claim against it based on the doctrine of laches. Tri–County argues that it should have been consulted and made a party to CNIC's action against the United States.

CNIC responds to Tri–County's arguments. First, CNIC asserts that its claim is based on general equitable principles and not the doctrine of subrogation. Thus, CNIC argues, its right to recovery is not contingent on whether the United States would be able to recover the funds. Second, CNIC asserts that it was prejudiced by the lack of notice of the assignment to Tri–County by the mere fact that Tri–County did not apply the disputed progress payments to repay bills for project expenses covered by CNIC's payment bond. Third, CNIC argues that Tri–County's laches argument fails because it relies on facts that are not before the Court, namely that Tri–County was not consulted during CNIC's Claims Court action. Moreover, CNIC asserts, Tri–County was fully aware of the Claims Court action and expressed an interest in its outcome, yet never requested to participate in any aspect of the proceeding.

The Court notes at the outset that this case presents a unique factual situation and thus the appropriate resolution is not readily apparent from existing case law. The Court's analysis is guided by the fact that equitable principles are designed to serve the ends of justice and whether they should be applied depends on the particular facts and circumstances of a case. *In re Black Ranches, Inc.,* 362 F.2d 19, 30 (8th Cir.), *cert. denied,* 385 U.S. 990, 87 S.Ct. 596, 598, 17 L.Ed.2d 450, 451 (1966). For the following reasons, the Court finds that equity supports judgment in favor of CNIC.

■ First, Tri–County applied the disputed progress payments to reduce Ervin's indebtedness on loans which were unrelated to the Watson project. The general rule is that a contractor's right to progress payments

may not be assigned. 41 U.S.C. § 15. The only exception is for assignments to financial institutions. *Id.* The purpose of the exception is to encourage financing of government contracts. *First Nat. City Bank v. United States,* 548 F.2d 928, 933, 212 Ct.Cl. 357 (1977) (en banc). If the assignee does not apply the progress payments to reduce indebtedness on loans made in connection with the government contract, but instead diverts the payments to reduce indebtedness not related to the government contract, the surety's exposure to liability increases. *Coconut Grove Exchange Bank v. New Amsterdam Cas. Co.,* 149 F.2d 73, 78 (5th Cir.1945). In this case the available funds were depleted but the potential liability of CNIC was not correspondingly reduced. *See Id.* at 78–79.

Second, it is undisputed that Tri–County never provided CNIC with notice of the assignment. Under the Assignment of Claims Act, the assignee has an affirmative obligation to notify the surety in writing of the assignment. 41 U.S.C. § 15. In *New Amsterdam Casualty Co. v. Manufacturers and Traders Trust Co.,* 330 F.2d 575 (2d Cir. 1964), the court was presented with facts similar to the case at bar: the United States engaged a contractor; a surety provided the bonds required by the Miller Act; the contractor assigned to a bank the right to progress payments; the bank failed to provide the surety with notice of the assignment; the contractor went bankrupt; and the surety compensated the unpaid subcontractors and materialmen. When the surety sued the bank to recover the assigned progress payments, the district court dismissed the action for failure to state a claim. The Second Circuit reversed on the ground that the district court's decision gave no effect to the notice requirement of the statute. The court stated that:

> We think it clear that Congress intended sureties to derive some advantage from getting notice of an assignment; otherwise the requirement is meaningless. Obviously the purpose of requiring notice is to afford the surety some protection against dissipation of moneys due or to become due from the government. It is equally plain that a surety has an interest in learning of an assignment, because of the bonds it is required to furnish pursuant to the Miller Act.
>
> The cases relied upon by defendant to the effect that an executed but improper assignment is valid as between litigants other than the United States, are beside the point. We are not concerned with the "validity" of the assignment to defendant. What we hold is simply that plaintiff should have an opportunity to prove, if it can, that it was prejudiced by lack of notice.

*Id.* at 576. The Court finds that CNIC was prejudiced by the lack of notice of the assignment. Tri–County applied a portion of the progress payments to loans unrelated to the Watson project, yet CNIC was not even aware that Tri–County was receiving the payments. While it is impossible to know if CNIC would have taken steps to protect its position had it been aware of the assignment, at least it would have had such an opportunity.

■ Third, the general rule is that a surety who is called upon to complete a contract or to pay laborers and materialmen has an equitable interest, superior to the interest of the contractor's assignee, in any funds retained by the United States on the contract. *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 138, 83 S.Ct. 232, 235–36, 9 L.Ed.2d 190 (1962); *Great American Ins. Co. v. United States,* 492 F.2d 821, 824, 203 Ct.Cl. 592 (1974). Although this rule does not strictly apply in the case at bar because it involves funds diverted by the assignee, not funds retained by the government, it is persuasive authority for the conclusion that the relative equities in this case favor the surety, CNIC. *See Henningsen v. U.S. Fidelity & Guaranty Co.,* 208 U.S. 404, 409, 28 S.Ct. 389, 391, 52 L.Ed. 547 (1908). For all of these reasons, the Court holds that CNIC has an equitable right to recover the $95,554.31 in diverted progress payments.

■ In addition to the general equitable considerations noted above, the Court concludes that CNIC has a separate claim for the $13,618.33 that the government erroneously paid to Tri–County after Tri–County had released its assignment. Tri–County re-

leased its assignment on December 15, 1986. The United States did not learn of this release and on October 18, 1988, the United States made a final payment of $13,618.33 to Tri–County. Once the United States learned of the mistaken payment, it requested that Tri–County return the funds but Tri–County did not do so. Tri–County does not now argue that it was legally entitled to the funds. Rather, Tri–County argues that because there is no evidence that CNIC made a demand on the United States to withhold the final payment, Tri–County should be allowed to retain it. The Court finds this argument unpersuasive. The general rule is that the government has a right to recover funds which it has erroneously paid. *United States v. Wurts*, 303 U.S. 414, 416, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). Tri–County retained the erroneous payment despite the government's request for its return. Thus, the government had a valid claim against Tri–County. As part of the settlement of CNIC's action against the United States in the Court of Claims, the United States assigned to CNIC the right to recover the $13,618.33. Under these circumstances, CNIC has a clear right to that amount.

█ Finally, the Court finds that CNIC's claims are not barred by the doctrine of laches. "[T]he existence of laches is a question primarily addressed to the discretion of the trial court." *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951). For the application of the doctrine of laches to bar a lawsuit, the plaintiff must be guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant. *Id.* at 31, 72 S.Ct. at 13–14. The doctrine of laches is premised upon the same principle that underlies statutes of limitation—the desire to avoid unfairness that can result from the prosecution of stale claims. *Costello v. United States*, 365 U.S. 265, 282–83, 81 S.Ct. 534, 543–44, 5 L.Ed.2d 551 (1961). Tri–County argues that laches should apply because CNIC did not make it a party in CNIC's suit against the United States in the Court of Claims. However, Tri–County offers no explanation of how this failure to make them a party in the Court of Claims action resulted in unreasonable and inexcusable delay, or how it resulted in prej-

udice to Tri–County. Thus, the Court rejects Tri–County's laches argument.

In short, the Court concludes that the relative equities favor CNIC and Tri–County will be ordered to return the $95,554.31 in diverted progress payments. Given this conclusion, the Court need not decide whether CNIC would have an implied cause of action under the Assignment of Claims Act.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

**IT IS ORDERED** that:

1. plaintiff CNIC's motion for summary judgment is granted;

2. defendant Tri–County's motion for summary judgment is denied; and

3. judgment is entered against Tri–County in the amount of $95,554.31.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**