James E. HOOVER, Petitioner,

v.

**DEPARTMENT OF the NAVY,**
**Respondent.**

No. 91–3227.

United States Court of Appeals,
Federal Circuit.

March 3, 1992.

See also 47 M.S.P.R. 122.

Suzanne M. Logue Lawrence, Neill & Shaw, Washington, D.C., argued, for petitioner. With her on the brief was William L. Bransford.

Phyllis Jo Baunach, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, James M. Kinsella, Asst. Director and Thomas W. Petersen. Also on the brief was Gail Heriot, Gen. Counsel, Naval Weapons Station, Charleston, S.C., of counsel.

Before RICH, NEWMAN and CLEVENGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

James E. Hoover appeals the final decision of the Merit Systems Protection Board, Docket No. AT035185C0491, 47 M.S.P.R. 122, dismissing his petition for enforcement on the ground of laches. We reverse the dismissal, and remand for consideration of the merits of the petition.

## BACKGROUND

In 1984 Mr. Hoover held the position titled "Supervisory Computer Specialist", grade GS–12, at the Naval Weapons Station, Charleston, South Carolina (the agency). In this position Hoover served concurrently as Head of the Data Processing De-

partment and Head of the Systems Design and Programming Division, the latter being one of the two divisions within the Data Processing Department. A consultant's study of the Data Processing Department, issued in May 1984, included the recommendation that the position of Department Head be upgraded to GM–13, and that a separate GS–12 Division Head position be created within the Department.

Implementing this recommendation, in September 1984 the new position described as "Director, Data Processing Department", GM–13, was announced by the agency. Hoover applied for the position but was not selected. In January 1985 Hoover was issued a Reduction in Force (RIF) notice effective March 31, 1985, stating that his "Supervisory Computer Specialist" position was abolished due to a reorganization. Hoover was subsequently assigned to a GS–11 position, although with grade and pay retention in accordance with the applicable law. In April 1985 a position described as "Head of Systems Design and Programming Division", GS–12, was announced by the agency. Hoover applied for this position but was not selected.

On April 5, 1985 Hoover appealed the agency's RIF action to the Board. The Board found that the RIF action was personal to Hoover, that is, an attempt to demote Hoover for perceived performance problems rather than a legitimate reduction in force due to reorganization. The Board also found that Hoover's pre-RIF position was abolished in name only and had been reconstituted, virtually unchanged, in two separate positions, neither of which was given to Hoover. The Board ordered the agency to cancel the RIF action. *Hoover v. Department of the Navy*, MSPB No. AT03518510491 (1985). In September 1985 the agency placed Hoover in a GS–12 position described as "Head of Plans, Programs and ADP Security Division", and submitted notice of this placement to the Board as proof of compliance with the Order.

By letter dated March 18, 1986 Hoover asked the Office of Personnel Management (OPM) to review the agency's compliance.

Hoover stated that in accordance with the Board decision he should have encumbered the GM–13 Department Head position, and therefore was entitled to GM–13 pay from either the date of his initial appointment to his pre-RIF position or the date of the announcement of the GM–13 Department Head position, until his reassignment in September 1985. Hoover stated that he also was entitled to retained grade and pay at the rate of GM–13 for the period after his September 1985 reassignment.

The OPM held that Hoover's rights, following the Board's decision reversing the RIF, were no greater than that of an employee who successfully filed a classification appeal for a higher grade. On this analogy, the OPM held that the requested retroactive relief was not available because the action that was corrected by the Board's decision did not result in a loss of grade or pay. *See* 5 C.F.R. § 511.703. The OPM apparently relied on the fact that Hoover had retained grade and pay following the RIF.

By letter dated June 17, 1986 Hoover filed a petition with the Office of Special Counsel (OSC), asserting that the agency's refusal to reinstate him to the GM–13 Department Head position constituted a prohibited personnel practice in that this refusal was a reprisal for his appeal to the Board; that the refusal discriminated against him on the basis of conduct not related to job performance; and that the refusal violated merit systems principles. The OSC refused Hoover's request for an investigation, stating that the information he submitted was insufficient to show that a prohibited personnel practice as defined in 5 U.S.C. § 2302(b) had occurred. The OSC added that the agency was not required to select Hoover for the GM–13 position.

In May 1990 Hoover petitioned the Board to enforce its 1985 Order. Hoover stated that he was entitled to be restored to the *status quo ante*, citing *Kerr v. National Endowment for the Arts*, 726 F.2d 730, 733 (Fed.Cir.1984); that the position to which he was assigned after the Board's decision was substantially different from

the position he encumbered prior to the RIF; and that since his original position continued in two separate positions after the RIF, he was entitled to be restored to one of these two positions.

The agency responded that the petition for enforcement was untimely under Board regulations, and alternatively that the petition should be barred on the ground of laches. The Board observed that at the time of its 1985 decision, Board regulations provided no time frame for filing a petition for enforcement, *see* 5 C.F.R. § 1201.181 (1985). However, the Board invoked the doctrine of laches, and dismissed the petition.

The Board held that Hoover had provided no satisfactory explanation for his delay in seeking enforcement of the 1985 decision, especially because he was apprised of the opportunity to file a petition for enforcement, albeit without time limit, in the 1985 decision itself. Hoover's argument that he was "not sitting on his rights", but had meanwhile sought assistance from the OPM and the OSC, was deemed insufficient since over four years had passed since these agencies had declined to act on his behalf. The Board held that this delay was not satisfactorily explained, and was therefore unreasonable.

The Board, in holding the petition was barred on the ground of laches, stated that "[i]n the absence of any satisfactory explanation for appellant's five year delay, there is no need to consider the prejudice to the agency." The Board found, however, that the agency had in fact been prejudiced. This finding was based on the retirement of key witnesses and the considerable growth and reorganization of the agency since 1985. The Board expressly adopted the agency's argument that "to require [the agency] to go back and reconstruct management and manpower decisions that have been made over the past five years would constitute undue prejudice, particularly since a number of key persons have retired." Having found unreasonable delay and prejudice, the Board barred Hoo-

ver's petition on the ground of laches. This appeal followed.

*Laches*

 The imposition of laches requires both unreasonable delay by the petitioner, and prejudice to the respondent because of the delay.[1] *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Cornetta v. United States,* 851 F.2d 1372, 1377–78 (Fed.Cir.1988) (*en banc* ). Laches is an affirmative defense, and the burden of proving both elements rests with the party raising it. *See Cornetta,* 851 F.2d at 1380 ("if the government invokes the affirmative defense of laches, it has the burden to show that it was prejudiced by a claimant's tardiness").

 The agency relies on "defense prejudice," whereby a defendant encounters increased and prejudicial difficulty in mounting its defense due to the claimant's delay. Examples of defense prejudice are the loss of records, destruction of evidence, fading memories, and the unavailability of witnesses. *Cornetta,* 851 F.2d at 1378. The agency's claim of prejudice is premised on its assertions that the relevant events since 1984 are difficult to reconstruct because of: (1) the extensive reorganization and growth of the agency's Data Processing Department; and (2) the retirement of key witnesses.

The retired witnesses identified as essential to the agency's defense are the Commanding Officer and Civilian Personnel Director at the time of the initial decision, Captain Heckathorn and Mr. Yant respectively, as well as Commander Maurer, Hoover's immediate supervisor prior to the RIF. The agency offered no evidence of the unavailability of these key witnesses beyond stating that they had retired. In response, Hoover stated:

> CAPT Heckathorn, CDR H. Maurer and Mr. Yant however, have all retired in the South Carolina area, and thus they would not be prevented from providing testimony regarding this action if deemed neces-

---

1. Although the Board's statement that there was no need to consider prejudice is incorrect as a matter of law, this error was harmless since the Board did consider and find prejudice.

sary. Moreover, CDR Maurer is currently employed by the Polaris Missiles Facility, which shares its personnel office with the Naval Weapons Station.

Hoover, referring specifically to the affidavit of Otis Sanders (discussed *infra*), also maintained that current agency employees with knowledge of the case are available.

The agency, which bears the burden of establishing prejudice, has not controverted Hoover's assertions as to the availability of these witnesses. It is the availability and memory of witnesses, not their employment status, that is relevant. The burden of establishing witness unavailability or memory failure is not met by simply showing that a potential witness has retired. The Board's finding that the retirement of key witnesses prejudiced the agency's defense is thus not supported by substantial evidence. *See Jackson v. Veterans Administration*, 768 F.2d 1325, 1329 (Fed.Cir. 1985) (the Board's factual determinations are reviewed under the substantial evidence standard); 5 U.S.C. § 7703(c)(3).

The agency asserted prejudice based on the difficulty of reconstructing relevant events since 1985, due to extensive reorganization and growth. As evidence of the reorganization and growth of the agency since 1985, the agency submitted the affidavit of Otis Sanders, an agency personnel employee since 1979 familiar with the organization of the agency, setting forth the history of the positions occupied by Hoover prior to the RIF, and subsequent evolution of the post-RIF positions. Although the agency maintained that reconstruction of the relevant events is burdensome, there was no assertion that the information is not available. Mr. Sanders averred personal knowledge of the positions involved as well as the restructuring of the agency. The Sanders affidavit that was submitted by the agency to support its assertions of substantial organizational growth, belies the agency's assertion that reconstruction is so difficult that the defense is prejudiced. The Board's finding that the agency was prejudiced is not supported by substantial evidence. *See Jackson*, 768 F.2d at 1329; 5 U.S.C. § 7703(c)(3).

Since the agency did not meet its burden of showing prejudice, an essential element of laches was not established. Thus we need not reach the issue of the reasonableness of Hoover's delay. *See Gardner v. Panama R.R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) ("where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief"); *Cornetta*, 851 F.2d at 1379 ("exalting the elapsed time over the prejudice component comes perilously close to making laches a one dimensional defense, contrary to its very *raison d'etre*").

The Board's dismissal of Mr. Hoover's petition as barred by laches is, accordingly, reversed. On remand, the petition shall be considered on its substantive merits.

### Costs

Taxable costs in favor of petitioner.

REVERSED and REMANDED.