NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BINTA M. ROBINSON,**
*Petitioner*

**v.**

**UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Respondent*

---

2020-2117

---

Petition for review of an arbitrator's decision in No. FMCS 140514-02191-3 by Joseph M. Sharnoff.

---

Decided:  December 21, 2021

---

JASON IAN WEISBROT, Snider & Associates, LLC, Baltimore, MD, argued for petitioner.  Also represented by JACOB Y. STATMAN.

STEVEN MICHAEL MAGER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., TARA K. HOGAN; BENJAMIN AHLSTROM, HEIDI BOURGEOIS,

Office of General Law, United States Patent and Trademark Office, Alexandria, VA.

———————————

Before NEWMAN, SCHALL, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Binta M. Robinson petitions for review of an arbitration decision dismissing her grievance regarding her removal by the United States Patent and Trademark Office ("PTO" or "agency") for unacceptable performance. *See Pat. Off. Pro. Ass'n v. U.S. Pat. & Trademark Off.*, No. FMCS 140514-02191-3 (May 29, 2020) (Sharnoff, Arb.) (decision available at J.A. 1–77). The Arbitrator dismissed Ms. Robinson's grievance for lack of jurisdiction and failure to prosecute due to unreasonable delay. We vacate the Arbitrator's decision and remand.

## BACKGROUND

In April 2012, Ms. Robinson began work as a patent attorney in the PTO's Office of Policy and International Affairs. J.A. 2398. After a written warning on August 27, 2013, for unacceptable performance, Ms. Robinson received notice of proposed removal on January 2, 2014. J.A. 2934. On April 10, 2014, the agency issued a final decision removing Ms. Robinson from her position. J.A. 2958. Shortly thereafter, the Patent Office Professional Association ("Union"), on behalf of Ms. Robinson, invoked arbitration as to her removal action per the parties' collective bargaining agreement ("CBA"). J.A. 2981.

Alongside this arbitration proceeding, on May 12, 2014, Ms. Robinson separately filed an Equal Employment Opportunity ("EEO") complaint asserting that she was removed for discriminatory reasons. J.A. 35. When the agency dismissed her complaint on June 2, 2014, she then appealed the agency's decision to the Equal Employment Opportunity Commission ("EEOC"). Ms. Robinson's

complaint was ultimately considered by the EEOC, and on March 9, 2017, the EEOC issued a final decision granting summary judgment in favor of the agency. J.A. 38–42; *see* J.A. 34–38. The arbitration hearing was then finally held on April 23–26, 2018, and May 21–23, 2018. J.A. 2. The parties finished filing post-hearing briefs by December 2018, and the Arbitrator issued an opinion on May 29, 2020, dismissing the grievance as inarbitrable for lack of jurisdiction and failure to prosecute due to unreasonable delay. J.A. 2, 77.

Ms. Robinson now petitions for review of the Arbitrator's decision. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703.

## DISCUSSION

Ms. Robinson's grievance arises under 5 U.S.C. § 7512, as it concerns a removal, so § 7703 applies here. 5 U.S.C. § 7121(f) (providing that "[i]n matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title . . . shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board"); *see also Cornelius v. Nutt*, 472 U.S. 648, 661 n.16 (1985); *Newman v. Corrado*, 897 F.2d 1579, 1582 (Fed. Cir. 1990). Section 7703(c) requires this court to set aside "any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

The Arbitrator dismissed Ms. Robinson's grievance "without addressing or resolving the merits" of her removal. J.A. 77. He did so on two separate grounds: first, because Ms. Robinson's EEO complaint constituted an election of remedies that precluded her from seeking

arbitration as a jurisdictional matter, and second, because Ms. Robinson's "unreasonable delay" in processing this case warranted dismissal for failure to prosecute. J.A. 72. We conclude that the Arbitrator erred in dismissing Ms. Robinson's grievance for lack of jurisdiction and abused his discretion in dismissing for unreasonable delay.

I

For starters, the Arbitrator held that he lacked jurisdiction to address the merits of Ms. Robinson's grievance. J.A. 65. Ms. Robinson's decision to challenge her removal through EEO procedures, the Arbitrator concluded, meant that "the Grievant effectively made her election to have all of her claims regarding her removal . . . addressed and resolved under the EEO Statute" rather than through the grievance procedure outlined in the CBA. J.A. 71. Determining that he was bound by a Federal Labor Relations Authority ("FLRA") decision, *Social Security Administration, Office of Hearings Operations v. International Federation of Professional and Technical Engineers, Association of Administrative Law Judges*, 71 F.L.R.A 123 (May 16, 2019), the Arbitrator further concluded that he did not have jurisdiction under 5 U.S.C. § 7121 to arbitrate Ms. Robinson's grievance. J.A. 69.

Both parties in this appeal agree that the Arbitrator erred in determining that FLRA law bound him to hold that Ms. Robinson's EEO challenge precluded her redress of grievance through the CBA. Pet'r's Br. 19–23; Resp't's Br. 15–16. As this is a case of removal, the Arbitrator is bound by the substantive rules of the Merit Systems Protection Board rather than those of the FLRA. *Buffkin v. Dep't of Def.*, 957 F.3d 1327, 1330 (Fed. Cir. 2020). In other words, both sides submit, and we agree, that the Arbitrator erred in holding that he lacked jurisdiction to decide this case. We accordingly reverse the Arbitrator's dismissal for lack of jurisdiction. *Rhodes v. Merit Sys. Prot. Bd.*, 487 F.3d 1377, 1380–82 (Fed. Cir. 2007).

## II

With jurisdiction out of the way, we turn now to what remains. As noted, after a seven-day merits hearing that spanned a month, the Arbitrator dismissed the case without addressing or resolving the merits because he agreed with the agency that Ms. Robinson's delay in processing the grievance was unreasonable.

As a threshold matter, we address Ms. Robinson's argument that, because the CBA imposes no deadline for holding the hearing, the Arbitrator acted arbitrarily, capriciously, and in violation of law by basing his dismissal on delay. Pet'r's Br. 48. We disagree. While it is correct that the CBA does not require that an arbitration hearing be held within a specific time frame, it does recognize the "importance of considering and resolving complaints and grievances promptly . . . ." J.A. 2057. It seems well within the authority of the Arbitrator to adjudicate this matter while policing a reasonable and prompt progression of the proceedings. *See, e.g.*, *Gonce v. Veterans Admin.*, 872 F.2d 995, 999–1000 (Fed. Cir. 1989).

But that hardly ends the matter. Rather, under the circumstances of this case, we are not satisfied that the Arbitrator's analysis regarding unreasonable delay (and the related question of whether delay prejudiced the agency's case) is adequate for purposes of our review. A remand is therefore required. We address unreasonable delay and prejudice in turn.

## A

First, as the Arbitrator noted, the agency's motion to dismiss the arbitration for unreasonable delay (ultimately granted by the Arbitrator) was filed on April 10, 2018, less than two weeks before the hearing began, five months after the hearing was set, and four years after the removal action itself. *See* J.A. 72, 75. The motion to dismiss prompted a detailed opposition from Ms. Robinson explaining, one by

one, the events of the intervening four years and providing reasons for each delay period within the relevant four-year time frame. *See* J.A. 2184–88. And, in fact, the Arbitrator's opinion included a two-and-a-half-page recitation of many events that transpired during that four-year period. J.A. 73–75.

The problem, however, is the Arbitrator's one-paragraph analysis and conclusion regarding those events, reproduced here in its entirety (and found at J.A. 75–76):

> The Arbitrator concludes that, even if the Union [i.e., Ms. Robinson] had valid reasons for some of the delays it requested and/or delays it caused without such requests, the cumulative effect of the Union's repeated delays – which resulted in the hearings in this case not being held for approximately four years from the date of the Agency's issuance to the Grievant of the Decision to Remove – constituted unreasonable delay. In the Arbitrator's judgment, the cumulative effect of a delay which totals about four years is excessive by any standard of reasonableness and warrants the dismissal of the grievance without addressing or resolving the merits. During the delay, as listed above[,] the Agency and/or the Arbitrator repeatedly requested the Union to propose and/or confirm dates for the Arbitration hearings[,] which requests resulted in no response on several occasions and requests for delay on many additional occasions. While arguably, there may have been valid compelling reasons for some of these delays, the Arbitrator finds that cumulatively, the total of about four years of delay is excessive and unreasonable. Certainly, the delay is inconsistent with the Parties' joint need to resolve disputes in a reasonably expeditious manner. While it is correct that the Parties' CBA does not contain a definite period within which the hearing must be scheduled or held, and the Arbitrator does

not intend to hold or to imply herein that the Parties have agreed to such a definite period, an almost four-year delay is found far beyond a period considered reasonable.

The sum and substance of the entire analysis appears to be that while the Arbitrator concluded that some unspecified number of unidentified delays occurred for "valid reasons," it was nonetheless his view that the "cumulative effect" of the delays constituted unreasonable delay. Indeed, the paragraph repeatedly refers to (1) the "cumulative effect" of the delays (without identifying an effect other than the passage of four years) and (2) the unidentified "compelling reasons" for some unspecified delays (without parsing which or how many of the delays were valid).

We conclude that this cursory treatment is insufficient under the circumstances of this case. The timeline set forth in the Arbitrator's decision contains numerous conclusory descriptions that fail to grapple with Ms. Robinson's fulsome analysis of the same events. For example, the Arbitrator noted that "[t]he Union [on behalf of Ms. Robinson], on March 3, 2015, requested a delay in the Arbitration from May 2015 to July 2015." J.A. 73. But regarding the same events, Ms. Robinson had stated that "[i]n March 2015, the Union noted to the Arbitrator that the Agency had never responded to the Union Information Requests and that Agency counsel had left the Agency." J.A. 2184. Similarly, as to a communication of June 5, 2015, the Arbitrator stated that Ms. Robinson "did not commit to a date for an Arbitration hearing," J.A 73, without addressing Ms. Robinson's explanation that "the Agency had not yet produced all documents responsive to [her] document requests and that all documents would have to be received and reviewed before setting a hearing date," J.A. 2185. Nor did the Arbitrator grapple with Ms. Robinson's statements that there was some mutual delay because both parties were involved in the separate

litigation regarding Ms. Robinson's EEO complaint from September 2015 through August 2017.  J.A. 2186–87.

In sum, the Arbitrator's recapitulation of the arbitration timeline failed to deal in any way with Ms. Robinson's comprehensive analysis and explanation of the events leading to delay.  Even if the Arbitrator had determined that the explanations provided by Ms. Robinson were insufficient, he was required to provide a reasoned basis for such a determination before dismissing Ms. Robinson's grievance for unreasonable delay.  The Arbitrator's opinion provides no such rationale.

B

Separately, we conclude that the Arbitrator improperly failed to address prejudice.  The decision contains no analysis by the Arbitrator of what, if any, effect was suffered by the agency because of the purported delay other than the passage of time.  In fact, the only specific reference concerning consequences of the delay is found in a single paragraph (found at J.A. 75), reproduced here in its entirety:

> The Arbitrator notes that the Agency asserts that, due to the above-detailed delay by the Union [i.e., Ms. Robinson], three of the individuals who the Agency intended to call as witnesses no longer worked for the Agency.  These individuals were: William House, an Employee Relations Specialist who had assisted the Proposing Official on the Written Warning and Notice of Proposed Removal; Nina Birch, the former Administrative Officer in the Office of Policy and International Affairs (previously the Office of Policy and External Affairs), whom the Union claimed had relevant testimony (which the Agency questions); [and] Karen Karlinchak, former Director of Human Capital Management (essentially the Director of Human Resources), whom the Union claimed had relevant testimony (which the Agency questions).  The

Agency noted that both the Proposing and Deciding Officials no longer are employed by the Agency but are expected to cooperate. Two of the Agency representatives who had been assigned to conduct the litigation of this case have left the Agency. The Agency noted that its Motion to Dismiss was filed exactly four years after the date the Agency issued the Decision to remove the Grievant.

The Arbitrator's treatment of this matter, i.e., the impact or prejudice to the agency caused by the purported delay, falls short on several levels.

First, the discussion consists entirely of the Arbitrator's summary of the agency's argument rather than his own recitation of the basis for his decision. So, we are left not knowing what, if any, portion of the agency's reasoning he adopted. But even if the Arbitrator had included the words "I agree" at the conclusion of the cited paragraph, that still would have been insufficient. Why? Principally, because these assertions were made by the agency prior to the hearing, a hearing that *occurred* after this submission and before the Arbitrator issued his award. Therefore, the Arbitrator's reliance, if any, on outdated predictions of what harm may occur seems misplaced, as those predictions could and should have been modified by any actual and germane effects of the delay felt at the hearing.

Next, a deeper dive into matters covered in the Arbitrator's single pertinent paragraph reveals even more problems. The Arbitrator identified the fact that three individuals "who the Agency intended to call" "no longer worked for the Agency," specifically, Mr. House, Ms. Birch, and Ms. Karlinchak. But Ms. Robinson—not the agency—had requested testimony from Ms. Birch and Ms. Karlinchak. And considering that the agency had contested the relevance of these two witnesses, J.A. 75, their potential absence cannot reasonably be construed as prejudicial to the agency's case. As to Mr. House, the

Arbitrator failed to explain why unavailability of an employee ancillary to the removal process would be prejudicial enough to warrant dismissing Ms. Robinson's grievance, particularly when the Proposing and Deciding Officials for the removal action were expected to be available (and, to the extent requested, *were* available[1]). J.A. 1691–92.

Indeed, the Arbitrator noted only that Mr. House "no longer worked for the Agency." J.A. 75. But a potential witness's departure from an agency does not necessarily constitute witness unavailability. *Hoover v. Dep't of Navy*, 957 F.2d 861, 864 (Fed. Cir. 1992). And a finding of prejudice based on witness unavailability presupposes that the witness's delay-induced difficulty in testifying materially impacted the party's case. *See id.* at 863–64 (noting that a finding of "defense prejudice" requires that the "defendant encounters increased and prejudicial difficulty in mounting its defense due to the claimant's delay"). Here, the Arbitrator failed to indicate why the departure of any of the aforementioned agency employees would have uniquely disadvantaged the agency's case. The Arbitrator's statement that Mr. House, Ms. Birch, and Ms. Karlinchak had left the agency, therefore, does not constitute a conclusion that there *was* prejudice to the agency.

What we are left with, then, is the remainder of the paragraph's reference to two agency "representatives who had been assigned to conduct the litigation" who had since left the agency. J.A. 75. What's missing, however, is any information on when these two individuals left (e.g., whether it was shortly after this action commenced) or what impact their departure had on the agency's case.

---

[1]    The Deciding Official, George Elliott, testified at the arbitration hearing at the agency's request. *See, e.g.*, J.A. 236–37. Rachel Wallace, the Proposing Official, was not called by the agency to testify at the hearing.

Finally, we are faced with the question of why the prejudice issue remained relevant at all after the seven-day merits hearing had concluded. For example, if the purported delay had materially impacted the agency's case, one would expect the Arbitrator to have made some reference to the effect of the delay on the hearing witnesses' availability, testimony, and/or recollections. But despite the Arbitrator having had the benefit of a lengthy hearing on the merits before issuing his dismissal, he made no determinations whatsoever as to any of these matters.

In sum, the Arbitrator's brief and cursory references to prejudice lack the specificity required to support any purported conclusion by the Arbitrator regarding prejudice or to allow us to properly review the same.

## CONCLUSION

For the foregoing reasons, we vacate the Arbitrator's decision and remand for further proceedings consistent with this opinion.

In remanding, we are acutely aware of further delaying the close of this longstanding matter. Therefore, while we conclude that a remand is necessary, we trust and expect that all involved will, going forward, ensure that any further proceedings occur as expeditiously as possible.

**VACATED AND REMANDED**

## COSTS

No costs.