**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LARRY JOHNSON, | DOCKET NUMBER |
| Appellant, | PH-0752-19-0109-I-1 |
| v. | |
| SOCIAL SECURITY | DATE:  February 20, 2024 |
| ADMINISTRATION, | |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Brien P. Connolly</u>, Esquire, <u>Danielle Gifford</u>, Esquire, and <u>Peter H. Noone</u>, Esquire, Belmont, Massachusetts, for the appellant.

<u>Amanda R. Stogsdill</u>, <u>Kristen Fredricks</u>, and <u>Michelle M. Murray</u>, Baltimore, Maryland, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which mitigated the appellant's removal to a 30-day suspension.  For the reasons discussed below, we GRANT the agency's petition for review, VACATE the administrative judge's findings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

concerning the penalty and FIND that removal is the maximum reasonable penalty. We further DENY the appellant's cross petition for review and AFFIRM the initial decision as MODIFIED concerning charges 1-3.

## BACKGROUND

The appellant was formerly employed as a GS-15 Supervisory Special Agent in Charge in the agency's Office of the Inspector General (OIG), Policy and Analysis Division in Baltimore, Maryland. Initial Appeal File (IAF), Tab 31 at 11. On October 15, 2018, the agency proposed his removal based on seven charges: (1) unauthorized queries of social security records; (2) improper access to social security records due to failure to obtain proper documentation; (3) unauthorized disclosure of social security records; (4) lack of candor; (5) failure to submit honest and complete financial disclosure forms; (6) misuse of official position; and (7) inappropriate conduct. IAF, Tab 21 at 39-49. By letter dated December 7, 2018, the agency sustained all of the charges and specifications and removed the appellant, effective December 8, 2018. *Id.* at 50-56.

The appellant filed a Board appeal challenging his removal and raised affirmative defenses of reprisal for engaging in protected activity and discrimination based on his race and color. IAF, Tab 1 at 9-10. After holding the appellant's requested hearing, the administrative judge issued an initial decision, sustaining five of the seven charges and mitigating the penalty to a 30-day suspension. IAF, Tab 40, Initial Decision (ID). In particular, the administrative judge sustained charges 1-3 and 6-7. Although he sustained charges 1-3, the administrative judge did not sustain the majority of the specifications because he found that they took place 4 to 7 years ago when the appellant was in a different non-management position and that it was therefore inequitable to punish the appellant for such misconduct. ID at 11-13. Regarding charge six, the administrative judge sustained one of the two specifications in which he found

that the appellant solicited donations from his subordinate employees for his nonprofit organization. ID at 18. Regarding charge seven, he sustained two of the three specifications in which he found that the appellant sent OIG documents to his wife to obtain her assistance with performing his official duties and, during fiscal years 2012 through 2017, he spent a considerable amount of official duty time per week working on business for his nonprofit organization. ID at 17-19. Finally, the administrative judge found that the agency failed to prove its charges of lack of candor or failure to submit honest and complete confidential financial disclosure forms. ID at 14-17. Regarding the appellant's affirmative defenses, the administrative judge found that the appellant's alleged protected activity in challenging the agency's purported racist hiring practices never occurred because he never sent the email or gave the speech. ID at 20-21. He further found that the appellant failed to prove his claim of discrimination based on his race or color. ID at 21-22.

The agency has filed a petition for review, disputing the administrative judge's finding that a 30-day suspension is the maximum reasonable penalty for the sustained charges and asserting that the administrative judge improperly dismissed the earlier specifications in support of charges 1-3. Petition for Review (PFR) File, Tab 1. The appellant has opposed the agency's petition and filed a cross petition for review and the agency has filed a reply to the appellant's opposition and a response to the appellant's cross petition for review. PFR File, Tabs 4, 7, 9.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency has complied with the interim relief order.

The appellant has filed a pleading challenging the agency's certification of compliance with the interim relief order and requesting that the Board order the agency to comply. PFR File, Tab 5. The Board's regulations do not provide for petitions for enforcement of interim relief orders; such petitions apply only to

final Board decisions. 5 C.F.R. § 1201.182(a). The Board's regulations, however, do allow an appellant to challenge an agency's certification that it has provided interim relief, and the Board may dismiss a petition for review if it finds the agency to be in noncompliance with its interim relief obligations. 5 C.F.R. § 1201.116(b), (e).

Here, as part of the interim relief order in the initial decision, the administrative judge ordered the agency to effect the appellant's appointment to his position as a GS-15 Special Agent in Charge and to provide him with pay and benefits of the position as of the date of the initial decision. ID at 25-26. The appellant contends that the agency has not complied with this order because, although it restored him to his former title and grade, he does not have the same duties, responsibilities, or supervisory authority. PFR File, Tab 5 at 5. In particular, he asserts that he is not permitted to telework, has no supervisory authority, has been assigned special projects, and the agency has not restored his law enforcement authority, weapon, credentials, or systems access. *Id.* However, the Board's authority to review compliance with an interim relief order does not extend to reviewing whether an appellant has been given appropriate duties or work assignments. *See Cook v. Department of the Army*, 105 M.S.P.R. 178, ¶ 7 (2007). In any event, we find that the agency has provided a compelling reason for returning the appellant to work under restricted job duties. *See, e.g., Purzycki v. General Services Administration*, 81 M.S.P.R. 188, ¶ 9 (1999) (noting that, although an employee should generally be reinstated to the position from which he was separated, an agency should be found in compliance with an interim relief order if it can show that it had a compelling reason for assigning duties other than those assigned prior to an appellant's separation). According to the agency, the appellant's position requires a top secret security clearance and the appellant was required to undergo a periodic re-investigation as of April 2019. PFR File, Tab 8 at 5-6. *See Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 4 n.2 (2004) (finding that the agency established a compelling reason for not assigning

the appellant flight-line duties where it had withdrawn the appellant's flight-line badge when it removed him from Federal service).

The administrative judge erred in applying the doctrine of laches regarding charges 1-3.

In charge 1, the agency alleged that the appellant made unauthorized queries of Social Security Administration (SSA) records on 27 occasions between January 11, 2012, and November 29, 2017. IAF, Tab 21 at 39-41. In charge 2, the agency alleged that the appellant improperly accessed SSA records without obtaining proper documentation to support the query on three occasions on December 21, 2011, and once on May 3, 2018. *Id.* at 41. In charge 3, the agency alleged that for each of the specifications underlying charges 1 and 2, excluding charge 2, specification 1, the appellant made unauthorized disclosures of SSA records to law enforcement and non-law enforcement entities. *Id.* at 41-42. The administrative judge found that the agency proved that the appellant made unauthorized queries and disclosures of social security records in 2017 and 2018. ID at 12. However, the administrative judge found that the alleged queries and disclosures made between 2011 to 2014 were barred by the equitable defense of laches. ID at 12-13. On review, the agency asserts that such a finding was erroneous because the appellant failed to establish an unreasonable delay or prejudice. PFR File, Tab 1 at 17-18. As set forth below, we agree.

The equitable defense of laches bars an action when an unreasonable delay in bringing the action has prejudiced the party against whom the action is taken. *See, e.g., Social Security Administration v. Carr*, 78 M.S.P.R. 313, 330 (1998), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999). The party asserting laches must prove both unreasonable delay and prejudice. *Id.*; *see Nuss v. Office of Personnel Management*, 974 F.2d 1316, 1318 (Fed. Cir. 1992); *Hoover v. Department of the Navy*, 957 F.2d 861, 863 (Fed. Cir. 1992); *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed. Cir. 1986). Here, the administrative judge merely found that it would be inequitable to punish the appellant based upon misconduct that took

place significantly earlier in his career. ID at 13. However, he made no finding that the appellant was prejudiced by any delay on behalf of the agency in bringing the charges or that any such delay was unreasonable. To the contrary, we find that the appellant has not shown that he was prejudiced by any delay given his testimony that he was able to discern who he ran queries for regarding each of the specifications. Hearing Transcript (HT) at 228-29. Further, the record reflects that the agency obtained statements from many of the individuals for whom the appellant ran the queries. *See, e.g., Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988) (noting that prejudice may arise due to the loss of records, destruction of evidence, fading memories, or unavailability of witnesses). Moreover, delay alone does not constitute laches, rather, the delay must be unreasonable and unexcused. *Id.* at 1377-78. In light of our finding that the appellant failed to establish prejudice, we need not decide whether any delay by the agency was unreasonable and unexcused. Finally, to the extent the appellant argues that he was prejudiced because agency management condoned and encouraged his behavior, PFR File, Tab 4 at 9, such an argument is properly considered as a possible mitigating factor in the penalty analysis, *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶¶ 18-19 (2010).

The agency proved charge 1: Unauthorized Queries of Social Security Records.[2]

In charge 1, the agency alleged that the appellant made numerous unauthorized queries of social security records between 2012 and 2017. IAF, Tab 21 at 39-41. The appellant does not dispute that he queried the SSA records system at the request of bank investigators. HT at 227-29, 262, IAF, Tab 18 at 50-54. Under the agency's policy, OIG agents are permitted to access and disclose SSA records only in very limited circumstances. IAF, Tab 26 at 63-68. This includes verifying for Federal, State, or local law enforcement officials whether a name and social security number match pursuant to a proper request.

---

[2] Neither party disputes the administrative judge's findings that the agency proved charges 6 and 7, but failed to prove charges 4 and 5 and, thus, we do not address them.

*Id.* at 65. There is, however, no provision under the agency's policy that permitted the appellant to query or disclose SSA information to bank investigators.

The appellant testified at the hearing that he believed his actions were permitted because he was encouraged to form relationships with bank investigators and that was something agents did. HT at 241. Such an argument, however, goes to the weight of the penalty. Regardless, during his interview with the agency's Office of Quality Assurance and Professional Responsibility, the appellant acknowledged that he was aware of the agency policy prohibiting the query and dissemination of social security information to non-law enforcement individuals. IAF, Tab 21 at 80, Tab 23 at 7, 12. Similarly, during his oral response, he confirmed that he "knew that he was violating SSA OIG policy by providing information to bank investigators." IAF, Tab 26 at 5. Further, the record reflects that the appellant annually acknowledged the agency's policy for systems access and table of penalties for violations. IAF, Tab 26 at 26-27, 55-60, 63-68, HT at 89 (testimony of the proposing official),[3] Tab 21 at 82-83, Tab 31 at 5-8. Accordingly, specifications 1-27 are sustained.

The agency proved charge 2: Improper Access of Social Security Records.

In charge 2, the agency alleged that the appellant improperly accessed SSA records because he failed to obtain proper documentation for four different queries he made of the SSA database on two separate dates. IAF, Tab 21 at 41. The administrative judge found that the agency proved specification 1, which alleged that on May 3, 2018, the appellant queried the SSA database and obtained information pertaining to a person with a social security number ending in the

---

[3] Although the agency's policy concerning systems access violations is dated February 2019, IAF, Tab 26 at 26, the proposing official testified that the same information concerning system access penalties was contained in the prior versions of the agency's policy from 2010 to 2019, HT at 89. Such testimony does not appear to be disputed.

specified four digits without obtaining proper documentation to support the query. ID at 12; IAF, Tab 21 at 41.

On cross petition for review, the appellant argues that the administrative judge erred in finding that the agency proved specification 1 because, although the appellant accessed the record, the agency failed to provide any evidence that his access was unauthorized. PFR File, Tab 4 at 29. Such an argument is unavailing. The appellant admits that, after receiving a telephone call from a special agent, he queried the system and provided match/no match[4] information to the agent. IAF, Tab 1 at 36. However, under agency policy, the appellant could disclose to Federal, state, and local law enforcement officials whether a given name and social security number matched only if specific procedures were followed, including, among other things, a request was made in writing on official letterhead, signed by a supervisory law enforcement official, sent via mail or facsimile, and included the name and social security number to be reviewed. IAF, Tab 26 at 65; HT at 97. Additionally, each special agent in charge is required to keep a master file of all requests and responses for social security number verification for annual reporting purposes. *Id.* at 68; HT at 142. Thus, contrary to the appellant's argument, the absence of documentation supports the agency's contention that the appellant's access was unauthorized due to failure to obtain proper documentation. Therefore, the administrative judge properly sustained specification 1.

The administrative judge did not address the merits of specifications 2-4 of charge 2 because, as discussed above, he improperly found that they were barred by laches. Addressing the merits now, we find that the agency proved these specifications by preponderant evidence. The appellant admits that he accessed the SSA database and searched for the relevant social security information that was requested by A.W., an intelligence analyst at the Florida Department of

_____

[4] Providing match/no match information means stating whether a given name and social security number matched. ID at 11 n.7.

Lottery, on behalf of a law enforcement agent. HT at 369 (testimony of the appellant); IAF, Tab 18 at 49, 56, Tab 31 at 91. Although the appellant contends that the email contained an attachment with a case report that he believed would be sufficient to document the request, HT at 261; IAF, Tab 18 at 56, there is no evidence that such a request was made in writing on official letterhead, signed by a supervisory law enforcement official, and sent via mail or facsimile, as required by agency policy, IAF, Tab 26 at 65. Accordingly, specifications 2-4 are sustained.

The agency proved charge 3: Unauthorized Disclosure of Social Security Records.

In charge 3, the agency alleged that for each of the unauthorized queries made in charges 1 and 2 (excluding charge 2, specification 1) the appellant also made unauthorized disclosures of SSA information to both law enforcement and non-law enforcement individuals. IAF, Tab 21 at 41-42. The administrative judge found that the agency proved specifications 1 and 2, which pertain to unauthorized disclosures of social security information the appellant made to bank investigators in 2017. ID at 11-12. The administrative judge found that the appellant generally conceded the access and disclosures, citing to the hearing compact discs, the appellant's written response to the proposal notice, and a written summary of the appellant's oral reply to the deciding official. ID at 11.

On cross petition for review, the appellant argues that the administrative judge erred in sustaining specification 1 because the appellant testified that he did not make any disclosure to T.B., an investigator for Regions Bank, as alleged and the agency offered no evidence to establish that such a disclosure occurred. PFR File, Tab 4 at 29. We need not decide whether the administrative judge erred in sustaining specification 1 because, as discussed below, the remaining sustained charges and specifications are sufficient to warrant removal. *See Alaniz v. U.S. Postal Service*, 100 M.S.P.R. 105, ¶ 10 (2005); *see also Luciano v. Department of the Treasury*, 88 M.S.P.R. 335, ¶ 10 (2001) (finding that the Board need not

address allegations of error concerning certain specifications of a charge because the sustained charges and specifications warranted the appellant's removal), *aff'd,* 30 F. App'x 973 (Fed. Cir. 2002).[5]

In specifications 2-27, the agency alleged that on various dates the appellant disclosed SSA record information to a non-law enforcement entity without authorization. IAF, Tab 21 at 39-42. The appellant does not dispute that he accessed and provided the information alleged in such specifications. IAF, Tab 18 at 50-54. He further concedes that the individuals to whom he provided the information were not law enforcement officials. *Id.* at 54; HT at 343. Accordingly, such disclosures were prohibited under agency policy, and we sustain specifications 2-27. HT at 96-98; IAF, Tab 26 at 65-68.

In specification 28, the agency alleged that on December 21, 2011, the appellant disclosed information relating to three social security records to a law enforcement entity without proper documentation or authorization. IAF, Tab 21 at 41-42. The appellant does not dispute that he provided the information to A.W., who similarly confirmed that the appellant verified the social security numbers for her. IAF, Tab 30 at 54, Tab 18 at 55-56. As discussed above under charge 2, specifications 2-4, such a request was not accompanied by proper documentation as required by agency policy. IAF, Tab 26 at 65-68. Accordingly, the agency proved that the appellant's disclosures were unauthorized, and we sustain specification 28.

The administrative judge erred in mitigating the penalty to a 30-day suspension.

When an agency proves fewer than all of its charges, the Board may mitigate the agency's selected penalty to the maximum reasonable penalty, so long as the agency has not indicated that it desires a lesser penalty to be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).

---

[5] In light of our finding, we deny the appellant's motion for leave to file a reply to address the agency's arguments in its response to the appellant's cross petition for review concerning specification 1 of charge 3. PFR File, Tab 10.

Alternatively, the Board may impose the penalty selected by the agency if, after balancing the mitigating and aggravating factors, it determines that the agency has justified its penalty selection as the maximum reasonable penalty. *Gray v. U.S. Postal Service*, 97 M.S.P.R. 617, ¶ 11 (2004), *aff'd*, No. 2005-3074, 2005 WL 1368093 (Fed. Cir. June 9, 2005). However, the Board may not disconnect its penalty determination from the agency's managerial will and primary discretion in disciplining employees. *Lachance*, 178 F.3d at 1258.

The Board has articulated factors to be considered in determining the propriety of a penalty, such as the nature and seriousness of the offense, the employee's past disciplinary record, the supervisor's confidence in the employee's ability to perform his assigned duties, the consistency of the penalty with the agency's table of penalties, and the consistency of the penalty with those imposed on other employees for the same or similar offenses. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). The Board places primary importance upon the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities. *See, e.g., Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, ¶ 9 (2013).

Considering the factors set forth in *Douglas*, particularly the nature and seriousness of the offense and the appellant's status as a supervisory law enforcement officer, and keeping in mind the employing agency's primary discretion in assessing penalties, we find that removal does not exceed the tolerable limits of reasonableness for the sustained misconduct. *See, e.g., Voorhis v. Department of Homeland Security*, 116 M.S.P.R. 538, ¶¶ 4, 9-12, 31-32 (2011) (finding that removal of a Senior Special Agent was a reasonable penalty for his misconduct in making unauthorized queries and disclosures related to immigration records, misusing his position, and engaging in a lack of candor), *aff'd*, 474 F. App'x 778 (Fed. Cir. 2012). In so finding, we have also considered the appellant's 14 years of Federal service, as well as his positive performance and accolades, and lack of any prior disciplinary actions.

Regarding the nature and seriousness of the offense, the appellant accessed and disclosed SSA information to non-law enforcement bank investigators, which was unauthorized and not related to his job duties.  He did so, despite annually acknowledging that he had read and understood the agency's systems access policies, which set forth the narrow circumstances under which an agent could disclose SSA information.  Such policies specifically stated "**[d]o not** access SSA records and/or release any SSA information unless you are **absolutely certain** that you are legally authorized to do so," and they set forth the minimum required administrative penalties for systems access offenses and that such offenses could lead to criminal penalties.  IAF, Tab 26 at 54-60, 63-68 (emphasis in original).  Moreover, the appellant's actions were intentional to the extent that he admitted that he knew that he was violating agency policy by providing information to bank investigators.  *Id.* at 5; IAF, Tab 23 at 24-25.  Additionally, regarding the inappropriate conduct charge, the administrative judge found that the appellant spent "considerable" work time on matters related to his nonprofit each week during fiscal years 2012-2017.  ID at 19.  The Board has held that an employee who conducts personal business while he is presumed to be performing the official duties of his position violates the trust the agency has placed in him and destroys the confidence established in the employer-employee relationship.  *See Cohen v. Internal Revenue Service*, 7 M.S.P.R. 57, 61 (1981) (affirming a removal action for conducting personal business on Government time, notwithstanding the appellant's 13 years of service, unblemished record, and absence of progressive discipline).

As the administrative judge correctly found, the deciding official considered charges 1-3 to be the most serious and testified that each on their own would support removal.  HT at 209.  She further testified that regardless of the date the misconduct occurred, under the agency's policy, one category C violation is an automatic 14-day suspension and a second violation would warrant removal.  HT at 213.  On review, the agency asserts that, in mitigating the penalty, the

administrative judge erred in finding that the appellant had only one offense because "offense" refers to a violation of the systems access rules, not an effected disciplinary action based on such a violation. PFR File, Tab 1 at 12. We agree.[6] To the extent the appellant accessed and disclosed SSA information that was unauthorized on more than two occasions, removal was appropriate under the agency's guidelines. IAF, Tab 26 at 57 (stating that removal is the minimum penalty for a second offense for a category C violation, improper access and disclosure of information to someone not entitled to the information).

The appellant contends that his access and disclosure of SSA information to bank investigators was condoned by agency management who encouraged agents to foster relationships with such bank investigators. HT at 231. In support of his argument, he presented the testimony of two retired special agents, G.F. and M.M-J. Although the Board considers condonation as a potential mitigating factor in the penalty analysis, *see Canada*, 113 M.S.P.R. 509, ¶¶ 18-19, the record does not reflect that either individual was aware of and condoned the appellant's specific misconduct. In particular, G.F. testified that there was a distinction between agents providing indirect[7] versus direct information to bank investigators and that he did not see a problem with agents providing indirect information to get around strict disclosure rules. HT at 387-89, 391-93. In contrast, he testified that disclosing match/no match information "is really very different" because it is a direct disclosure that agents could make to law enforcement agents. HT at 391.

---

[6] We also agree with the agency that the administrative judge erred in characterizing the deciding official's testimony as stating that she "strongly considered a suspension." PFR File, Tab 1 at 6-7; ID at 23; HT at 207-08.

[7] As an example of an indirect disclosure, G.F. testified that a bank investigator might contact an OIG agent about a bank record that looks suspicious and inform the agent that the individual might be a deceased beneficiary. HT at 387-89. The agent may go into the system to see if that person is deceased, but when he talks to the bank investigator, he does not directly tell him whether the person is dead or alive. *Id.* Instead, the agent might say, "that is not something we would be interested in opening a case on, that person is probably having a latte at Starbucks." *Id.* Through that indirect information, the bank investigator could infer that the person is alive. *Id.*

He also testified that the agents under him were familiar with not being able to provide direct information from the SSA database to bank investigators because it was not worth getting in trouble. HT at 393. In contrast, M.M-J. testified that it was common practice in the Atlanta Field Division for field agents to run match/no match queries for bank investigators and that it was considered to be within agency practice. HT at 412. Such testimony, however, was conclusory, and M.M-J. was not asked to explain when it was common practice, how she knew that it was common practice, or to describe whether the manner in which agents provided such information comported with the appellant's actions at issue. HT at 410. Thus, we find that M.M's conclusory testimony alone does not warrant mitigation of the penalty. *See, e.g.*, *Herrera-Martinez v. Social Security Administration*, 84 M.S.P.R. 426, ¶ 16 (1999) (noting that, although condonation may be a mitigating factor, the Board has not always found that condonation warrants mitigation).

Finally, although the administrative judge found that the deciding official failed to properly consider the fact that the appellant was not a supervisor when he committed some of the conduct underlying charges 1-3, ID at 23 n.12, the appellant was at all times a law enforcement officer whom the agency was entitled to hold to a higher standard of conduct, *see, e.g.*, *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, 257 (2001) (stating that a higher standard of conduct and degree of trust are required of an incumbent of a position with law enforcement duties); *Fischer v. Department of the Treasury*, 69 M.S.P.R. 614, 619 (1996) (noting that supervisors and law enforcement officials are held to a higher standard of conduct than other employees).

Accordingly, we find that removal is the maximum reasonable penalty for the sustained misconduct.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[8] Since the issuance of the initial decision in this matter, the Board has updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is the most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebcites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.




*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.